## SENTELL *v.* NEW ORLEANS AND CARROLLTON RAILROAD COMPANY.

ERROR TO THE COURT OF APPEALS FOR THE PARISH OF ORLEANS,
IN THE STATE OF LOUISIANA.

No. 232.   Submitted March 25, 1897. — Decided April 26, 1897.

A state statute providing that no dog shall be entitled to the protection of
the law unless placed upon the assessment rolls, and that in a civil action
for killing a dog the owner cannot recover beyond the value fixed by
himself in the last assessment preceding the killing, is within the police
power of the State.

THIS was an action originally instituted by Sentell in the civil district court for the Parish of Orleans, to recover the value of a Newfoundland bitch, known as "Countess Lona," alleged to have been negligently killed by the railroad company.

The company answered, denying the allegation of negligence, and set up as a separate defence that plaintiff had not complied either with the requirements of the state law, or of the city ordinances, with respect to the keeping of dogs, and was, therefore, not entitled to recover.   The law of the State was as follows:

"SECTION 1. *Be it enacted by the General Assembly of the State of Louisiana,* That sec. (1201) twelve hundred and one of the Revised Statutes of Louisiana be amended and reenacted so as to read as follows: From and after the passage of this act dogs owned by citizens of this State are hereby declared to be personal property of such citizens, and shall be placed on the same guarantees of law as other personal property; provided, such dogs are given in by the owner thereof to the assessor.

"SEC. 2. *Be it further enacted, etc.,* That no dog shall be entitled to the protection of the law unless the same shall have been placed upon the assessment rolls.

" Sec. 3. *Be it further enacted, etc.,* That in civil actions for the killing of or for injuries done to dogs, the owner cannot recover beyond the amount of the value of such dog or dogs, as fixed by himself in the last assessment preceding the killing or injuries complained of.

" Sec. 4. *Be it further enacted, etc.,* That all laws in conflict with this act be repealed.

" Approved July 5, 1882." Laws of 1882, p. 160.

By the city ordinance, adopted July 1, 1890, No. 4613, " no dog shall be permitted to run or be at large upon any street, alley, highway, common or public square within the limits of the city of New Orleans; provided that this section shall not apply to any dog to which a tag, obtained from the treasurer, is attached." By section 8 the treasurer was directed to furnish metal dog tags to all persons applying for the same at the rate of two dollars each, available only for the year in which they were issued.

Plaintiff denied the constitutionality of the state act; and the court charged the jury that the fact that the dog was not tagged, as required by the city ordinances, could not affect the right of the plaintiff to recover; that the above act of the legislature was unconstitutional as destructive of the right of property; and that a dog, being property, a law which requires that property should not be protected unless listed for taxation, was in conflict with the Constitution of the United States, providing that no person shall be deprived of his life, liberty or property without due process of law. The jury returned a verdict in favor of the plaintiff for $250, upon which judgment was entered.

The case was carried to the Court of Appeals, which reversed the judgment of the trial court, and entered judgment in favor of the defendant, holding that plaintiff should have shown a compliance with the law of the State and the ordinances of the city as a condition precedent to recover. Whereupon plaintiff sued out a writ of error from this court.

*Mr. George Denègre* and *Mr. Omer Villeré* for plaintiff in error.

*Mr. Henry P. Dart* for defendant in error.

MR. JUSTICE BROWN, after stating the case, delivered the opinion of the court.

This case turns upon the constitutionality of a law of the State of Louisiana requiring dogs to be placed upon the assessment rolls, and limiting any recovery by the owner to the value fixed by himself for the purpose of taxation.

The dog in question was a valuable Newfoundland bitch, registered in the American Kennel's stud-book, and was kept by her owner for breeding purposes. It seems that while following him in a walk upon the streets, she stopped on the track of the railroad company, and, being otherwise engaged for the moment, failed to notice the approach of an electric car which was coming toward her at great speed; and, being moreover heavy with young, and not possessed of her usual agility, she was caught by the car and instantly killed. The Court of Appeals was evidently of opinion that her owner, knowing of her condition, should not have taken her upon a public thoroughfare without exercising the greatest care and vigilance, and that the accident was largely due to a want of prudence upon his part. The facts, however, were not properly before the court, and the opinion was put upon the ground that the state law was constitutional and valid as a police regulation to prevent the indiscriminate owning and breeding of worthless dogs. The judges also annexed a certificate that the decision was reversed upon the ground that the law was constitutional, and that no other point was passed upon.

By the common law, as well as by the law of most, if not all, the States, dogs are so far recognized as property that an action will lie for their conversion or injury, 2 Bl. Com. 393; *Cummings* v. *Perham*, 1 Met. 555; *Kinsman* v. *State*, 77 Indiana, 132; *State* v. *McDuffie*, 34 N. H. 523; *Parker* v. *Mise*, 27 Alabama, 480; *Wheatley* v. *Harris*, 4 Sneed, 468; *Dodson* v. *Mock*, 4 Dev. & Bat. 146; *Perry* v. *Phipps*, 10 Ired. Law, 259; *Lentz* v. *Stroh*, 6 S. & R. 33; although, in the absence of a statute, they are not regarded as the subjects of

larceny. 2 Bish. New Crim. Law, § 773; *Case of Swans*, 7 Coke, 86, 91; *Norton* v. *Ladd*, 5 N. H. 204; *Findlay* v. *Bear*, 8 S. & R. 571; *People* v. *Campbell*, 4 Parker C. C. 386; *State* v. *Doe*, 79 Indiana, 9; *Ward* v. *State*, 48 Alabama, 161; *State* v. *Lymus*, 26 Ohio St. 400; *State* v. *Holder*, 81 N. C. 527.

The very fact that they are without the protection of the criminal laws shows that property in dogs is of an imperfect or qualified nature, and that they stand, as it were, between animals *feræ naturæ* in which, until killed or subdued, there is no property, and domestic animals, in which the right of property is perfect and complete. They are not considered as being upon the same plane with horses, cattle, sheep and other domesticated animals, but rather in the category of cats, monkeys, parrots, singing birds and similar animals kept for pleasure, curiosity or caprice. They have no intrinsic value, by which we understand a value common to all dogs as such, and independent of the particular breed or individual. Unlike other domestic animals, they are useful neither as beasts of burden, for draught (except to a limited extent), nor for food. They are peculiar in the fact that they differ among themselves more widely than any other class of animals, and can hardly be said to have a characteristic common to the entire race. While the higher breeds rank among the noblest representatives of the animal kingdom, and are justly esteemed for their intelligence, sagacity, fidelity, watchfulness, affection, and, above all, for their natural companionship with man, others are afflicted with such serious infirmities of temper as to be little better than a public nuisance. All are more or less subject to attacks of hydrophobic madness.

As it is practically impossible by statute to distinguish between the different breeds, or between the valuable and the worthless, such legislation as has been enacted upon the subject, though nominally including the whole canine race, is really directed against the latter class, and is based upon the theory that the owner of a really valuable dog will feel sufficient interest in him to comply with any reasonable regulation designed to distinguish him from the common herd. Acting upon the principle that there is but a qualified prop-

erty in them, and that, while private interests require that the valuable ones shall be protected, public interests demand that the worthless shall be exterminated, they have, from time immemorial, been considered as holding their lives at the will of the legislature, and properly falling within the police powers of the several States. Laws for the protection of domestic animals are regarded as having but a limited application to dogs and cats; and, regardless of statute, a ferocious dog is looked upon as *hostis humani generis,* and as having no right to his life which man is bound to respect. *Putnam* v. *Payne,* 13 Johns. 312; *Hinckley* v. *Emerson,* 4 Cow. 351; *Brown* v. *Carpenter,* 26 Vermont, 638; *Woolf* v. *Chalker,* 31 Connecticut, 121; *Brent* v. *Kimball,* 60 Illinois, 211; *Maxwell* v. *Palmerton,* 21 Wend. 407.

Statutes of the general character of the one in question have been enacted in many of the States, and their constitutionality, though often attacked, has been generally, if not universally, upheld. Thus in *Tower* v. *Tower,* 18 Pick. 262, an act which authorized "any person to kill any dog or dogs found, and being without a collar," was construed to authorize the killing of a dog out of the enclosure of his owner, although he was under his immediate care, and this was known to the person killing the dog.

In *Morey* v. *Brown,* 42 N. H. 373, a statute providing that no person should be liable for killing a dog found without a collar with the name of the owner engraved thereon, was held to justify the killing, although the defendant had actual notice of the ownership of the dog found without such collar. Plaintiff claimed that the act was unconstitutional, but the court held that it was not an act to take private property for public use, or to deprive parties of their property in dogs; but merely to regulate the use and keeping of such property in a manner which seemed to the legislature reasonable and expedient. "It is a mere police regulation, such as we think the legislature might constitutionally establish." To the same effect are *Carter* v. *Dow,* 16 Wisconsin, 317; *Mitchell* v. *Williams,* 27 Indiana, 62; *Haller* v. *Sheridan,* 27 Indiana, 494.

The statutes of Massachusetts, from the earliest colonial

period to the present day, are reviewed in an elaborate opinion in *Blair* v. *Forehand*, 100 Mass. 136, and laws are shown to have existed, sometimes for the killing of "unruly and ravenous dogs"; sometimes, as in Nantucket in 1743, for the killing of "any dog or bitch whatsoever that shall at any time be found there"; and sometimes for the killing of dogs "strolling out of the enclosure or immediate care of the owner," or going at large without a collar. In the particular case it was held that a statute declaring that any person might, and every police officer and constable should, kill or cause to be killed, all dogs, whenever or wherever found, not licensed and collared according to other provisions of the statute, was within the constitutional limits of the authority of the legislature. Such acts appear to have been very frequent in that State, and their constitutionality generally acquiesced in.

In the more recent case of *Morewood* v. *Wakefield*, 133 Mass. 240, the same statute was construed as authorizing any person to kill a dog which was licensed, but had no collar on, provided that he could do so without committing a trespass, although no warrant for the killing of dogs had been issued. The constitutional objection against general warrants, which was the occasion of so much controversy in that State in its colonial days, was held not to apply to dogs, and a warrant was sufficient which ordered the killing of all dogs, living in a town, not duly licensed and collared.

In *Ex parte Cooper*, 3 Tex. App. 489, it was held that dogs were not property within the tax clause of the constitution, and that a tax upon dogs was a police regulation and a legitimate exercise of the police power. The point was made that dogs, being property, should, under the constitution, be taxed *ad valorem* as other property was. But it was held that the law was not a tax law in its ordinary sense, but a police regulation.

So in *Tenney* v. *Lenz*, 16 Wisconsin, 566, it was held that it was a legitimate exercise of the police power "to regulate and license the keeping of dogs," and that the exercise of that power was based upon the idea that the business licensed, or

kind of  property  regulated,  is liable  to work  mischief, and
therefore needs  restraints which  shall  operate as  a protection
to the public.

In  *Jenkins* v.  *Ballantyne*,  8  Utah,  245, the  constitutional
question is considered· at  great  length, and  the provisions of a
city charter· authorizing  the city to tax,  regulate or prohibit the
keeping  of  dogs, and  to authorize  the  destruction  of the same,
when at large,  contrary  to  the  ordinance, and  the issuance of
a  certificate of  registration,  requiring  the wearing  of a  collar
by the  dog with  his  registered  number thereon, and  providing
that all  dogs not  so registered  and collared  should  be liable to
be killed  by any  person, were  valid  and were  not in  violation
of the Fifth Amendment to the Constitution.

The  only case  to the  contrary,  to which  our  attention  has
been called,  is that of  *Mayor &c.* v.  *Meigs*, 1  MacArth.  53, in
which a  city ordinance  of Washington,  requiring  the owner of
dogs to  obtain a  license for  the keeping  of  the same, was held
to be illegal.   The  substance  of  the  opinion  seems to be that
if the  dog be  a species  of property, which  was conceded, it was
entitled  to  the  protection  of other  property, and  the owner
should  not  be  required  to  obtain  a  license  for  keeping  the
same.

· Even if it  were assumed  that dogs  are property in  the fullest
sense of  the  word, they  would still  be subject  to  the  police
power  of the  State, and  might  be destroyed  or  otherwise dealt
with, as  in the  judgment of  the legislature  is necessary  for the
protection  of its  citizens.    That  a State,  in a  *bona fide* exercise
of its  police  power, may  interfere  with  private  property, and
even  order its  destruction, is  as well  settled  as  any  legislative
power can  be, which  has for  its objects  the  welfare and  com-
fort of  the citizen.    For  instance,  meats,  fruits and  vegetables
do not  cease to  become  private property  by their  decay ;  but
it is  clearly within  the power  of  the  State  to  order  their de-
struction  in  times of  epidemic, or  whenever they  are so  exposed
as to be  deleterious  to the  public  health.    There  is also  prop-
erty  in rags  and clothing ;  but that does  not  stand  in the  way
of their  destruction  in case  they become  infected  and  danger-
ous  to the  public  health.·   No  property  is more  sacred  than

one's home, and yet a house may be pulled down or blown up by the public authorities, if necessary to avert or stay a general conflagration, and that, too, without recourse against such authorities for the trespass. *Bowditch* v. *Boston*, 101 U. S. 16; *Mouse's case*, 12 Coke, 63 ; *Governor &c.* v. *Meredith*, 4 T. R. 794, 797 ; *Stone* v. *The Mayor &c.*, 25 Wend. 157 ; *Russell* v. *The Mayor &c.*, 2 Denio, 461.

Other instances of this are found in the power to kill diseased cattle, to destroy obscene books or pictures, or gambling instruments ; and, in *Lawton* v. *Steele*, 152 U. S. 133, it was held to be within the power of a State to order the summary destruction of fishing nets, the use of which was likely to result in the extinction of valuable fisheries within the waters of the State.

It is true that under the Fourteenth Amendment no State can deprive a person of his life, liberty or property without due process of law; but in determining what is due process of law we are bound to consider the nature of the property, the necessity for its sacrifice, and the extent to which it has heretofore been regarded as within the police power. So far as property is inoffensive or harmless, it can only be condemned or destroyed by legal proceedings, with due notice to the owner; but so far as it is dangerous to the safety or health of the community, due process of law may authorize its summary destruction. As was said in *Jenkins* v. *Ballantyne*, 8 Utah, 245, 247, " The emergency may be such as not to admit of the delay essential to judicial inquiry and consideration, or the subject of such action and process may be of such a nature, or the conditions and circumstances in which the act must be performed to effect the protection and give effect to the law may be such as to render judicial inquiry and consideration impracticable."

Although dogs are ordinarily harmless, they preserve some of their hereditary wolfish instincts, which occasionally break forth in the destruction of sheep and other helpless animals. Others, too small to attack these animals, are simply vicious, noisy and pestilent. As their depredations are often committed at night, it is usually impossible to identify the dog or to fix the

liability upon the owner, who, moreover, is likely to be pecuniarily irresponsible. In short, the damages are usually such as are beyond the reach of judicial process, and legislation of a drastic nature is necessary to protect persons and property from destruction and annoyance. Such legislation is clearly within the police power of the State. It ordinarily takes the form of a license tax, and the identification of the dog by a collar and tag, upon which the name of the owner is sometimes required to be engraved, but other remedies are not uncommon.

In Louisiana there is only a conditional property in dogs. If they are given in by the owner to the assessor, and placed upon the assessment rolls, they are entitled to the same legal guaranties as other personal property, though in actions for their death or injury the owner is limited in the amount of his recovery to the value fixed by himself in the last assessment. It is only under these restrictions that dogs are recognized as property. In addition to this, dogs are required by the municipal ordinance of New Orleans to be provided with a tag, obtained from the treasurer, for which the owner pays a license tax of two dollars. While these regulations are more than ordinarily stringent, and might be declared to be unconstitutional, if applied to domestic animals generally, there is nothing in them of which the owner of a dog has any legal right to complain. It is purely within the discretion of the legislature to say how far dogs shall be recognized as property, and under what restrictions they shall be permitted to roam the streets. The statute really puts a premium upon valuable dogs, by giving them a recognized position, and by permitting the owner to put his own estimate upon them.

There is nothing in this law that is not within the police power, or of which the plaintiff has a right to complain, and the judgment of the Court of Appeals is, therefore,

*Affirmed.*