HUBERT L. DICKERMAN vs. THE CONSOLIDATED RAIL-
WAY COMPANY.

Third Judicial District, Bridgeport, October Term, 1906.
BALDWIN, HAMERSLEY, HALL, PRENTICE and THAYER, Js.

At common law the property which one had in a dog was of a base
and inferior kind, and entitled to less regard and protection than
property in other domestic animals.
From an early period the General Assembly of this State has enacted
laws in respect to the custody and ownership of dogs and the
protection of property rights therein, and by such legislation the
ancient common-law rules upon these subjects have been mate-
rially changed.
Under the existing law of this State which practically defines the
status of a dog as property (General Statutes, §§ 4477–4488, as
amended by Public Acts of 1903, Chap. 6), no action will lie to
recover the value of an unregistered dog over six months old
against one who unintentionally, but negligently, kills it.
These statutory provisions are but regulations for the protection of
person and property, which it is competent for the legislature
to enact in the legitimate exercise of its police power.

Argued October 23d, 1906—decided January 3d, 1907.

ACTION to recover damages for negligently killing the
plaintiff's dog, brought to the City Court of New Haven
and tried to the jury, after a demurrer to the complaint
had been overruled (*Mathewson, J.*); verdict and judgment
for the plaintiff for $50, and appeal by the defendant.
*Error and cause remanded.*

*Harry G. Day* and *Eliot Watrous*, for the appellant (de-
fendant).

*Louis M. Rosenbluth*, for the appellee (plaintiff).

HALL, J. The complaint alleges that on the 14th of
February, 1906, the plaintiff was the owner of a dog of the
value of $100, and that while said dog was lawfully on
Alden Avenue, in the city of New Haven, and on the tracks

of the defendant's street railway, and in the care of the plaintiff's servant, the defendant negligently ran its car upon said dog and killed it.

To this complaint the defendant demurred, upon the grounds, among others, that under the law of this State no action lies for the negligent killing of a dog, and that it did not appear that the dog had been registered and had upon its neck a collar, as required by statute, nor that it was under the age of six months. The court overruled this demurrer.

Upon the trial of the case to the jury, the plaintiff having offered evidence to prove that the dog killed was a bull dog about two years old and was killed as alleged in the complaint, the defendant, in substance, requested the court to charge the jury: (1) that the plaintiff had no right of action in this State for such killing of the dog, and (2) that if it appeared that the dog was more than six months old the plaintiff was not entitled to recover unless it appeared that the dog had been registered and had a collar upon its neck, marked as required by statute.

The court did not so charge, but instructed the jury, in substance, that the dog, even though it was not registered and licensed, was entitled to be upon the public street and was "not a trespasser in any sense, if it was upon the railroad tracks" of the defendant; that if the defendant was guilty of negligence it was liable for the death of the dog, unless the person in control of the dog was guilty of negligence, and that the measure of damages was the value of the dog, not exceeding the sum of $100 claimed in the complaint.

The jury returned a verdict for the plaintiff for $50 damages.

Section 4481 of the General Statutes, as amended by chapter 6 of the Public Acts of 1903, provides that " every person who shall steal or confine and secrete any registered dog or any dog under the age of six months, or who shall unlawfully kill or injure any such dog, shall be liable to the owner in a civil action and shall be fined not more

than two hundred dollars, or imprisoned not more than six months, or both."

If the dog in question was over the age of six months and was not registered, clearly the defendant was not liable to the plaintiff in a civil action, unless such right of action was given by some other law than this statute. The plaintiff claims that he had such a property in the dog at common law that he can maintain this action. The trial court in its rulings as above stated apparently sustained this claim.

But the question which is decisive of this case is, not what property in dogs their owners or keepers formerly had under the common law, but what property rights in them are recognized and protected by our present law, and which upon these questions is largely statutory.

From an early period in our history our legislature, and our towns by authority of the legislature, have, for the protection of person and property from injury by dogs, passed laws and adopted regulations providing upon what conditions and under what circumstances dogs might be owned and kept, and what property rights in them would be protected; and by such legislation the ancient common law rules upon these subjects have been materially changed.

The following are some of the statutes which have been enacted regarding the owning and keeping of dogs.

As early as 1765 an Act was passed authorizing the town authorities to make all necessary rules and regulations for confining, restraining, and killing dogs within such towns, as they should judge reasonable for the effectual security of the inhabitants, and providing that all dogs not confined and restrained within such rules and orders might be killed by any person. In 1798 it was enacted that dogs permitted to go at large should wear a collar, with the name of the owner thereon, and his place of residence, and that any dog found at large, with or without the permission of the owner, without such collar, might be killed. In 1829 towns were empowered to tax dogs, and any person was authorized to kill any dog, the tax levied upon which the owner had refused to pay. An Act of 1853 empowered

the inhabitants of any town to offer a bounty for the destruction of any dog not kept in conformity with all legal regulations for keeping, taxing, licensing, and restraining dogs. In 1856 it was enacted that owners of dogs should cause them to be registered, numbered, and collared, and should pay an annual tax on them; that any person might kill any unregistered dog running at large; that it should be the duty of sheriffs and constables to cause such dogs to be destroyed; and that any person killing or maiming such registered and collared dog without justifiable cause should be liable in an action of trespass for the reasonable value of the dog. In 1864 selectmen were directed to offer a bounty to any person for the killing of any unregistered dog. In 1866 the keepers of unregistered dogs were required to kill them. After the legislation of 1867 and 1873 regarding the taxation of dogs and the repeal of inconsistent laws, the Revision of 1875 required the assessors of each town to cause all dogs therein, over three months old, to be entered on the list of the keeper or occupant of the premises where such dog was kept, and to be added to the rate bill of the town at certain sums, and omitted all former laws requiring the registering of dogs. By an Act passed in 1878 the provision of the Revision of 1875 requiring dogs to be taxed was repealed; every owner or keeper of a dog was required to annually cause it to be registered, numbered, described, and licensed in the town clerk's office, and collared, and to pay a certain license fee; and it was provided that any person owning or keeping a dog without complying with said requirements should be guilty of a misdemeanor, upon conviction of which he should be fined, or imprisoned, or both; that any person might kill any dog not so licensed and collared, and that he should be paid a bounty of $1 therefor; and that any person killing any dog so registered, unless such killing was justifiable in the protection of life or property, should be liable to the owner in an action of damages on said statute for the " full value of such dog," and also to be punished by fine or imprisonment upon a criminal prosecu-

tion.   In 1880 the above Act of 1878 was amended so as to provide that an unlicensed dog might be lawfully killed by any constable or policeman, instead of by "any person," as before provided, and that such constable or policeman should receive the bounty fixed therefor; and was afterward amended so as only to require dogs over six months old to be so registered, licensed, and collared, and so as to provide a civil and criminal liability, as before stated, for the stealing, confining, secreting, or injuring, as well as for the killing, of a registered dog.

At common law the property which one had in a dog was of a base and inferior kind, and "entitled to less regard and protection than property in other domestic animals"; and the stealing of a dog did not amount to larceny; *Woolf* v. *Chalker*, 31 Conn. 121, 127; *Wilton* v. *Weston*, 48 id. 325, 336; nor is the stealing of an unregistered dog made larceny by statute.

Although at common law the stealing of a dog was regarded as such an invasion of a property right as would amount to a civil injury, redressible by a civil action (2 Bl. Comm. 393), it may be questioned whether one who through mere negligence killed a dog was liable to the owner in damages, or whether the provisions of our present statute rendering one liable, both civilly and criminally, for stealing, confining, secreting, or unlawfully killing or injuring a registered dog were intended to apply to any other than a wilful or wanton killing or injuring.   But however these questions may be answered, we are satisfied that under our present law, which practically defines by statute the status of the dog as property, no person has such property in an *unregistered* dog over six months old as will enable him to maintain an action for the value of such a dog against one who unintentionally, but negligently, kills it; and that this conclusion follows from the provisions of our statutes requiring dogs over six months old to be registered; making it a misdemeanor to keep or harbor an unregistered dog; requiring selectmen to make diligent search for unregistered dogs and to cause the persons owning or harbor-

ing the same to be prosecuted; and providing that all such dogs may be killed by any constable or policeman, and that such officers shall receive a reward for killing such dogs. Whether by reason of these provisions of our statutes the owner of an unregistered dog has absolutely no right or property in it which the law will protect, we have no reason to inquire in this case.

That only constables and policemen are authorized to kill unlicensed dogs, and that this dog was not killed by either, is not decisive of the plaintiff's right to recover. The question is not whether the defendant can justify the act of killing the dog by showing that it was lawful, but whether, even if the act was unlawful, the defendant has, in negligently killing an unregistered dog, deprived the plaintiff of a property right which enables him to recover in this action.

Changing the law of 1878 so that any " constable or policeman," instead of " any person," might kill unregistered dogs and receive the reward therefor, was for the promotion of peace and good order, and not for the purpose of giving to the keepers of unregistered dogs the right to recover their value if unintentionally killed by another person than a constable or a policeman.

Section 4481 as amended, as before stated, imposes a civil and criminal liability only for the stealing, confining, secreting, killing, or injuring, of a *registered* dog, or one under six months of age. If one has such a property right in his *unregistered* dog, whether over or under six months of age, that he may recover its value by a civil action when it is either negligently or wilfully killed by another person than a policeman, he certainly would have no less a right after it was registered. Why then provide by statute a remedy by civil action for the unlawful killing of a *registered* dog, or a dog under six months of age?

The plaintiff's contention, if pressed to its logical result, would support a civil action to enable one who has not registered and does not intend to register his dog, to obtain possession of it for the purpose of keeping it, even when

it is detained by one who is authorized to kill it, and even though he would be liable to prosecution for keeping it, immediately after having obtained possession of it; and that for a conversion of, or injury to, his unregistered dog, he would be entitled to the same compensation as if it had been registered, notwithstanding the fact that he was keeping it unlawfully when it was converted or injured, and that it might at any time or place have been, and still might be, lawfully killed by a constable or policeman.

One might perhaps succeed in keeping a valuable unregistered dog for some time without being prosecuted therefor, and without its being killed by the officers of the law, but to be deprived of the opportunity of so keeping such a dog is not an injury of the same kind and attended by the same legal consequences as the deprivation of one's legal right to keep his valuable registered dog.

Such statutes as ours requiring the registration of dogs, and the payment of a fee therefor, and punishing the keeping of unregistered dogs and requiring them to be destroyed, and so depriving one of any property in the latter which the law will protect, are not for the purpose of revenue, but are regulations for the protection of person and property, and are a legitimate exercise of the police power. In *Sentell* v. *New Orleans & C. R. Co.*, 166 U. S. 698, 706, 17 Sup. Ct. Rep. 693, it is said that owing, among other things, to the qualified property in dogs, "they have from time immemorial been considered as holding their lives at the will of the legislature," and that "it is purely within the discretion of the legislature to say how far dogs shall be recognized as property, and under what restrictions they shall be permitted to roam the streets."

Most of the cases cited by the plaintiff, in support of his claimed right of action for the negligent killing of an unregistered dog, relate to instances where the killing was intentional and in which it does not appear that the dogs killed were kept in violation of the law.

In *Jemison* v. *Southwestern R. Co.*, 75 Ga. 444, and in *Moore* v. *Charlotte Electric Ry., L. & P. Co.*, 136 N. Car.

554, 48 S. E. 822, it is said that railroad companies are not liable for the killing of dogs, where the killing is the result of mere negligence upon the part of employees in the management of their cars. Whether in these cases the dogs killed had been kept in compliance with the requirements of the law does not appear.

We are not required to decide whether or not one might, under any circumstances, have a right of action for a wilful killing of an *unregistered* dog, by a person who was neither a constable nor a policeman, nor whether § 4481 of the General Statutes gives a right of action for the negligent killing of a *registered* dog. It is sufficient for the purposes of this case for us to hold that the trial court erred in ruling that the plaintiff had such property in an *unregistered* dog as gave him a right of action against the defendant for a mere negligent killing of such a dog.

There is error and the case is remanded with directions to sustain the defendant's demurrer to the complaint and proceed with the case according to law.

In this opinion the other judges concurred.