## PARDEE v. ROYAL BAKING CO.

No. 3986.   Decided December 17, 1923.   (221 Pac. 847.)

1. ANIMALS—DOG IS "PROPERTY." A dog is "property" within the meaning of that term as used in actions for negligently killing.

2. DAMAGES—$125 FOR KILLING REGISTERED COCKER SPANIEL NOT EXCESSIVE. Where defendant, while violating a speed ordinance, ran over and killed plaintiff's registered Cocker spaniel dog nine months of age, a verdict of $125 was not excessive as damages, there being testimony that the dog was worth from $200 to $250.

Appeal from District Court, Third District, Salt Lake County; *Ephraim Hanson*, Judge.

Action by James D. Pardee against the Royal Baking Company. Judgment for plaintiff, and defendant appeals.

AFFIRMED.

*M. E. Wilson* and *J. R. Haas*, both of Salt Lake City, for appellant.

*D. B. Hempstead*, of Salt Lake City, for respondent.

WEBER, C. J.

From a judgment in favor of plaintiff for $125 the defendant appeals. The case was tried before the court without a jury. The findings of the court follow the averments of the complaint, and are in substance: That the defendant was at all times mentioned in the complaint a corporation under the laws of Utah; that on August 14, 1922, plaintiff was the owner of a full-blooded Cocker spaniel dog of the value of $125, and that plaintiff had paid for and procured a license from the city treasurer of Salt Lake City to own and maintain this dog within the city limits of Salt Lake City. That on said August 14, 1922, at Salt Lake City, Utah, at the in-

tersection of State street and Kensington avenue, defendant, driving its automobile at an excessive rate of speed, to wit, in excess of 30 miles per hour, carelessly and negligently drove its automobile, in violation of section 1889 of the city ordinances of Salt Lake City, at such excessive rate of speed, and carelessly, negligently, and recklessly ran into, ran over, and killed said Cocker spaniel; that by deviating to one side at least six inches said automobile would not have struck said dog, or if the same had been stopped the said accident would not have occurred, but the driver of said automobile failed to exercise such care and prudence, and deliberately and without any cause failed to turn to one side or stop his automobile, and thereby ran over and killed said dog; that at said time and place there was ample room on said street for said driver to have turned said automobile to either side from the straight course the said automobile was then and there pursuing; that there was no obstruction of any kind whatsoever in front of said driver of said automobile that in any way prevented him from seeing said Cocker spaniel in said street intersection, if he had looked ahead, and said driver could have seen said Cocker spaniel if he had looked ahead; that said driver was guilty of negligence and carelessness in failing to look ahead while driving said automobile at said time and place, and in failing to observe said Cocker spaniel in time to prevent said accident; that the driver of said automobile was at the time of said accident a servant of the defendant corporation, and was then and there acting within the scope of his employment by said defendant in driving said automobile at the time and place in question; that at the time of said accident there was in operation and force a city ordinance which defendant violated, and which provided that no person shall drive, ride, or propel, or cause to be driven, ridden, or propelled, any vehicle upon or along any street of Salt Lake City, at a speed greater than is reasonable and safe, having due regard for the width, grade, character, traffic, and common use of such street, or so as to endanger life, limb, or property in any respect whatever; or at a speed greater than at the rate of 25 miles per hour upon or along any street outside of the congested district; or at a speed

Appeal from Third District

greater than at the rate of 20 miles per hour in crossing the intersection of any street outside of the congested district; or at a speed greater than at the rate of 15 miles per hour in turning from one street into another.

The court further found that a city ordinance of Salt Lake City made it unlawful for any person to kill or cause to be killed a registered dog without the consent of its owner or possessor. The conclusions of law were in accordance with the findings.

The negligence of the driver of defendant's truck, and that such negligence was the proximate cause of the dog's death, is clearly stated in the findings, and as the evidence fully supports the findings in that regard, we do not deem it necessary to review the evidence on that subject.

It is insisted by defendant that there is no evidence upon which a finding can be predicated that the automobile was being driven or operated by any servant of defendant acting within the scope of his authority. Again we do not deem it necessary to enter into details, save to say that the record contains substantial evidence that the car belonged to defendant, and that it was being operated by defendant in the usual course of its business. The evidence thus adduced by plaintiff is undisputed.

Another proposition advanced by defendant is "that there was no property right invaded by the defendant, because a dog is not property within the meaning of that term as it is used in an action for damages for negligently killing such an animal."

It is true, as counsel say, that many years ago the property in a dog was considered so base as not to be the subject of larceny, but those days have passed, and to-day dogs have a well-established legal status.

"By the common law, as well as by the law of most, if not all, the states, dogs are so far recognized as property that an action will lie for their conversion or injury." *Sentell* v. *Railroad*, 166 U. S. 698, 17 Sup. Ct. 693, 41 L. Ed. 1169.

"The owner of a dog has such property in him that he may maintain an action for the wrongful killing or injuring him." 3 C. J. p. 153, § 490.

Even an unlicensed dog is not a trespasser on the highway,

and so its owner may recover for negligent injury to it. *Lacker* v. *Strauss*, 226 Mass. 579, 116 N. E. 236, L. R. A. 1917F, 434.

"The law now recognizes that dogs have pecuniary value, * * * as much so as horses and cattle, or other domestic animals." *Roos* v. *Loeser*, 41 Cal. App. 782, 183 Pac. 204, citing *Ten Hopen* v. *Walker*, 96 Mich. 236, 55 N. W. 657, 35 Am. St. Rep. 598.

In *Roos* v. *Loeser*, supra, it is said:

"Considerable sums of money are invested in dogs, and they are the subject of extensive trade. Aside from their pecuniary value their worth is recognized by writers and jurists. Cuvier has asserted that the dog was perhaps necessary for the establishment of civil society, and that a little reflection will convince one that barbarous nations owe much of their subsequently acquired civilization to the dog. From the building of the pyramids to the present day, from the frozen poles to the torrid zone, wherever man has wandered there has been his dog."

How general, well-nigh universal, the recognition of the bond between man and his most capable, loyal, and loving slave, servant, and companion is evident in the literature of the ages.

In peace the dog finds content in the humblest service, ever faithful, ever true; in warfare he glories in every opportunity to do his master's bidding, and never counts the cost. Above all other mortal creatures is the dog "faithful unto death." No sense of imminent peril, no pangs of hunger, no neglect or abuse by or from the one to whom the dog has given his affection can shake the full measure of his devotion, dim the light that brightens his eyes, or dampen the ardor of his love. "Service" is his creed.

With unappreciative mind and ungrateful heart many take the performance of this greatest of dumb friends as a matter of course, yet are there some high and sensitive souls, like that of St. John Lucas, whose concept of a dog's devotion was so clear that he could write:

> "This prayer at least the gods fulfill,
>     That when I pass the flood and see
> Old Charon by the Stygian coast
>     Take toll of all the shades that land,
> Your little, faithful barking ghost
>     May leap to lick my phantom hand."

But leaving the subject of doghood, let us consider the particular dog whose tragic death was the precursor of this lawsuit. He was three months old when purchased by the plaintiff, and nine months of age when killed. He was a Cocker spaniel, of noble lineage, and royal blood. His name was Laddie. His father was ''Dennison Nugget,'' a prize winner of the Golden State Kennels. Testifying to his good qualities, the plaintiff gave this description of his dog:

"He was rather small, short legged dog, and was white in color, with red spots on him; he had a smooth head on top, and very long ears, very large feet, and had long hair on his chest, and hair on his feet, and hair on his elbows. His hair was silky, very fine, and he had no odor that dogs usually have, and he had great, big, large, brown eyes, which looked like human eyes; a very intelligent dog. He was one of the prettiest dogs I ever saw."

An odorless dog with human eyes! Fortunate was the defendant that the case was not tried before a sympathetic jury, and that a stony-hearted judge fixed the amount of damages! Several competent witnesses testified to the dog's value as being from $200 to $250. The amount found by the court was therefore not excessive as claimed by defendant's counsel. The judgment is affirmed.

GIDEON, THURMAN, and CHERRY, JJ., concur.

FRICK, J. I unhesitatingly and heartily concur in the encomium of the CHIEF JUSTICE on man's faithful and loyal friend and companion, the dog. In view of my vivid recollection of the early days on a pioneer farm in Iowa where my only playmate and companion was old faithful Carolus, I could not do otherwise. Many a cold day his fur provided warmth, and his fleas kept me active. After conceding everything that is said of the dog, however, I nevertheless cannot overlook the fact of the dog's natural and inherent propensities. A dog, even one with ''human eyes,'' when roaming the streets, cannot be regarded the same as a human being or a child. A dog roaming at large on the city streets is largely a nuisance. But be that as it may, the presumption is that a dog while running at large on the streets will take care of himself, and the general experience of men is that he does so. One driving upon the streets therefore may act

upon such presumption. *Henry* v. *St. Paul City Ry.*, 109
Minn. 503, 124. N. W. 245, 134 Am. St. Rep. 794, and cases
there cited. See, also, *Dickerman* v. *Consolidated Co.*, 79
Conn. 427, 65 Atl. 289, 8 Ann. Cas. 417; *Jemison* v. *South-
western Ry. Co.*, 75 Ga. 444, 58 Am. Rep. 476; *Jones* v. *Bond*
(C. C.) 40 Fed. 281; *Moore* v. *Charlotte Elec. Ry.*, 136 N. C.
554, 48 S. E. 822, 67 L. R. A. 470; *Wallace* v. *Waterhouse*,
86 Conn. 546, 86 Atl. 10, Ann. Cas. 1914B, 82. Those cases
are cited merely to show that it is generally recognized by
the courts that the presumption prevails that a dog will take
care of himself, and that a driver of any vehicle may act
upon such presumption until the contrary appears. That
fact, however, does not authorize a driver who drives a ve-
hicle on the streets to willfully or recklessly run over a dog;
nor to run his vehicle in violation of a statute; and in such
event, if he injures even a dog, to claim immunity. That the
defendant did drive recklessly and in violation of a statute
is alleged in the complaint, and found by the court. I there-
fore concur in the affirmance of the judgment upon the sole
ground that in this case it is alleged and found that the dog
was killed while the defendant was driving its automobile in
violation of a statute and in a reckless manner.