## Richard W. Soucy *v.* John Wysocki

Court of Common Pleas     Tolland County     File No. 792

Memorandum filed March 13, 1952.

*Francis P. Pallotti,* of Hartford, for the Plaintiff.

*James C. Parakilas,* of Thompsonville, for the Defendant.

FitzGerald, J. The plaintiff has brought this action to recover damages of the defendant for shooting to death his dog. The complaint alleges that the dog was his property and that the act of the defendant was wanton, wilful and unlawful. For answer the defendant admits the plaintiff's ownership of the dog and denies the remaining allegations of the complaint and, by way of counterclaim, asks damages of the plaintiff for the loss of large num-

bers of pheasants owned by him and for injuries to his crops, alleged to have been caused by the dog. At the trial the defendant conceded that he shot and killed the dog but took the position that his act was justified by law. The facts of the case, hereinafter stated, give rise to two questions the determination of which controls the ultimate decision.

The undisputed facts may be reduced to this statement: The defendant is the owner of fifty-two acres of land in the town of Somers. In 1950 he leased his entire land to the state for the term of four years. It was provided in the lease that fifteen acres would be a sanctuary and that the remainder be used as public ground for hunting and trapping, subject to the rules, regulations and statutory authority pertaining to such program. The area constituting the sanctuary comprises the front and side yards of the defendant's farmhouse, located on the north side of Shaker Road, and land to the rear thereof of considerable depth. The defendant is engaged in the business of raising pheasants. This project is carried on in wired pens and adjoining ranges located some distance to the rear of the farmhouse but within the sanctuary area. Both the sanctuary area and the public hunting ground are posted. On October 8, 1951, and for five months prior thereto, the plaintiff was the owner of a male English setter dog of the age of one year and five days. Being over the age of six months, the dog was not registered as required by law. At about 9 o'clock on the morning of that day, the defendant shot the dog to death. The shooting occurred upon the defendant's property but outside of the sanctuary area. The legal hunting season in Connecticut was not open until late October. By a regulation of the Connecticut board of fisheries and game, the training of hunting dogs is permitted in the field during the period from August 1 to March 31 yearly.

The following facts are found from the evidence as a whole: During the spring, summer and early fall of 1951, the plaintiff, whose hobby is that of hunting during the legal hunting season, had been putting the dog through an intensive program of training preparatory to the approaching hunting season. In August the point was reached where the program required lessons in the field. On one or two occasions prior to October 8 the plaintiff took the dog upon the defendant's property, but outside of the sanctuary area, to train him to heel, sit, point, flush and otherwise respond to orders when in the field. A hunting dog is not trained to kill the bird. The plaintiff knew of the character of the defendant's land and of the restricted sanctuary area, and that the defendant was in the business of raising pheasants and had pheasants located within the sanctuary area to the rear of the farmhouse. On one occasion prior to October 8 the plaintiff's dog penetrated within the prohibited sanctuary area and approached the pens, causing confusion and worriment to the pheasants within. On that occasion the defendant called out that the dog be summoned off, which was done. Thereafter, on October 8, the plaintiff, in company with a friend and the dog, again drove out in the vicinity of the defendant's property, stopped the car on the highway and entered upon the defendant's property. This was at a point about 1000 feet east of the farmhouse and some distance outside of the sanctuary area. The dog's attention was attracted to a flying pheasant over in the direction of the sanctuary area. The plaintiff said, "Get it," whereupon the dog proceeded in that direction and in doing so crossed over into the sanctuary area and eventually came alongside of one of the pens. The pheasants within became excited and worried. The defendant, who was on the scene, took his shotgun from a nearby shed and stalked the dog. The dog withdrew from the area of the pens and proceeded to head back

easterly in the direction of its master. When it had reached a small open swamp located outside of the sanctuary area, the defendant took aim and shot the dog dead. The plaintiff's plea to the defendant not to kill the dog, called out from where he was approaching the dog, followed by an offer to pay for any damage the dog may have done, fell upon ears that heard and were transmitted to a mind determined not to be moved to compassion. Actually the dog had done no damage. In the defendant's judgment the dog warranted the sentence of death, which he proceeded summarily to inflict in the self-appointed role of executioner.

The first question is whether the defendant had the statutory right to kill the dog in the light of the attending circumstances. Section 3405 of the General Statutes, so far as is material to the case at bar, reads: "Any owner or the agent of any owner of any domestic animal or poultry . . . may kill any dog which he shall find pursuing or worrying any such domestic animal or poultry." Parenthetically, it is noted that Webster's New International Dictionary (2d Ed.) includes pheasants in the definition of the word poultry.

In 2 Am. Jur. 764, § 96, appears this statement: "It is ordinarily held that to justify the killing of a dog for the protection of a domestic animal or fowl, he must at the time be attacking or threatening the animal or fowl; the fact that he has in the past attacked animals or fowls will not justify killing him. The same rule has been laid down in several instances as the result of a construction of particular statutes, although by statute in some jurisdictions a different rule obtains. To warrant the killing of a dog for the protection of a domestic animal or fowl, the circumstances must be such as to create a reasonable belief that such killing is necessary to prevent injury to the animal or fowl."

At the time the defendant killed the dog, it was not attacking, pursuing or worrying any of his pheasants. It was withdrawing from the scene and had left the sanctuary area. Its conduct at the time was not such as to create a reasonable belief on the part of the defendant that the killing of the animal was necessary for the protection of his pheasants. When applied to the facts of the case the statute avails the defendant nothing. His act did not fall within the purview and protection of the statute.

The next question involves a consideration of the unregistered status of the dog and the plaintiff's right to maintain an action for its death. By the common law of Connecticut no action lies for the negligent killing of an unregistered dog; *Dickerman* v. *Consolidated Ry. Co.,* 79 Conn. 427, 434; conversely, such action does lie for the negligent killing of a registered dog. *Griffin* v. *Fancher,* 127 Conn. 686, 689.

It has been noted that the complaint is not one sounding in negligence. The basic allegation reads: "[T]he defendant wantonly, wilfully and unlawfully shot and killed" the dog. Section 3401 makes it a crime to unlawfully kill a licensed dog or a dog under the age of six months. This statute would confer a right of action upon an owner of a registered dog for wilful or wanton conduct causing its death. *Griffin* v. *Fancher,* supra, 690. But the unregistered status of the dog in question deprives the plaintiff of the benefit of any statutory right of action. Such action, if maintainable at all, must find support in the common law. In the *Dickerman* case, supra, the Supreme Court of Errors left open the question of "whether or not one might, under any circumstances, have a right of action for a wilful killing of an *unregistered* dog"; and in the *Griffin* case, 688, it is recognized that "Our common law is constantly in process of gradual but steady evolution."

On the facts stated, the killing of the plaintiff's dog is found to have been wanton and wilful. The Supreme Judicial Court of Massachusetts in *Lacker* v. *Strauss,* 226 Mass. 579, 581, L.R.A. 1917F 434, has recognized that at common law the owner of an unregistered dog may recover damages for its wilful killing, and, among other courts of equally high repute, the United States Court of Appeals for the District of Columbia, in *Scharfeld* v. *Richardson,* 133 F. 2d 340, 341, has so recognized.

"In the absence of a statute prescribing a different rule, the failure of the owner of an animal to comply with statutory requirements [relating to registration] does not affect the rights of the owner as against third persons. . . . The statute, however, may prescribe a different rule." 2 Am. Jur. 721, § 34. While § 3379 authorizes a dog warden in the performance of his duties to take into custody and impound an unregistered dog over six months old and prescribes the conditions under which the dog may be mercifully killed by him after a designated period (120 hours), neither that statute nor any other statute of Connecticut constitutes an unregistered dog an outlaw to be killed summarily at the whim of any individual. Section 3405, already considered in connection with the first question, relates to the killing of "any dog," be it registered or unregistered, who in effect is preying upon domestic animals or poultry. But that statute has been found to have no application on the facts of the case.

The conclusion reached is that the unregistered status of the dog does not preclude the plaintiff from recovering damages of the defendant for its death. The killing has been found to have been wanton and wilful. Upon principle and upon authority, recovery should be recognized and allowed by the common law.

It is found that the dog had a value of $300. This value is arrived at by a consideration of its breeding, background, training and general potentialities.

It is further found that the defendant has not proved his claim for damages under his counterclaim.

Accordingly, the issues are found for the plaintiff on his complaint, and for the plaintiff on the defendant's counterclaim, with an award of damages to the plaintiff in the amount of $300 together with taxable costs.