Decided 21 August, 1906.

**RESER *v.* UMATILLA COUNTY.**

86 Pac. 595.

ANIMALS—RUNNING AT LARGE—POLICE POWER—GRAZING.

1. Under the general police power a state may prohibit the running at large of stock and compel the owners of such animals to keep them within an enclosure, and may even prohibit the grazing of animals within certain districts.

ANIMALS—TAX FOR GRAZING PRIVILEGE.

2. *Quaere*: Can a state, as an incident of the police power, exact a charge for the privilege of grazing animals or allowing them to run at large?

LICENSE AND TAX DISTINGUISHED.

3. A tax is a charge imposed upon persons or property by government, while a license is a charge for a privilege.

CONSTITUTIONAL LAW—UNIFORMITY OF TAXATION—SHEEP LAW.

4. A law imposing on each sheep brought within a state a charge so great as to be obviously not a license fee, and under such conditions that the charge is against the property and not against the sheep owner or the business of sheep raising, is a revenue measure imposing a tax, and unconstitutional because the tax is not levied according to the value of each piece of property assessed, thereby producing unequal and ununiform taxation in violation of Const. Or. Art. IX, § 1.

From Umatilla: WILLIAM R. ELLIS, Judge.

Statement by MR. CHIEF JUSTICE BEAN.

In 1905 the legislature passed an act "to tax all foreign sheep coming into the State of Oregon for the purpose of pasturage, or being driven through the State," which act is as follows:

"Sec. 1. That all sheep, whose owner or owners residing outside of the State of Oregon, shall bring or cause to be brought into the State of Oregon, any such sheep, for the purpose of pasturage, or for the purpose of driving such sheep through the State of Oregon, such sheep shall be liable for, and the owner thereof shall pay, the following tax upon each and every head of sheep: 20 cents per head for the purpose of pasturage by the year or any fractional part of a year, and when any such sheep shall be driven from the state or any county of the state, such sheep shall be taxed, and the owners thereof made to pay, 5 cents per head for each and every county through which such sheep shall be driven; and taxes herein specified shall be a preferred lien against any sheep liable to such tax, and the stock inspectors of the several counties of this state may take into their possession any of said sheep and keep and retain such possession until such taxes are paid; provided, that if such tax

so due is not paid within thirty days after the same has been assessed, any inspector of stock having any such sheep shall sell the same, by giving ten days' published notice in the nearest newspaper to where said sheep is held, of the time and place of such sale. And the sale, as herein provided for, shall convey an absolute title to any and all sheep so sold; provided, that the owner of any sheep so sold may, within ten days thereafter, redeem such sheep by paying all charges incurred in the keeping and sale thereof, together with the tax due thereon, and 10 per cent interest and damages thereon on the whole amount of taxes and charges.

Sec. 2. The stock inspectors of the several counties of this State are hereby empowered to collect the taxes mentioned in Sction 1 of this act; and it shall be the duty of such inspectors to collect all taxes and fines hereunder, and to keep careful watch that all foreign sheep shall pay all the taxes and fines herein provided for; and when any such sheep shall come or be driven into any county of this State, it shall be the duty of the stock inspector of such county to immediately take such sheep into his possession and to keep and retain possession of the same until the taxes and fines due thereon are paid, or until the sale thereof, as herein provided for, has been made; and all taxes and fines collected under this act shall be paid into the general fund of the county where collected. The stock inspector shall be allowed $3.00 per day for each and every day actually employed, and said wages to be paid by the county for which such services are rendered; provided, that when the inspector of any county has to take any stock in charge and sell the same, in order to collect the taxes and fines due thereon, then such per diem charge of $3.00 per day shall be a charge against any sheep so held and sold for taxes and fines, as herein provided for.

Sec. 3. When any tax shall be paid by the owner or owners of any sheep, the stock inspector, to whom such tax is paid, shall issue a tax certificate to the party so paying, which receipt or certificate shall state for what purpose the same was issued, whether for pasturage or driving; provided, that under no condition shall any stock inspector issue any certificate, permit, or receipt, whether for pasturage or driving, for any diseased or unhealthy sheep, but shall immediately cause all diseased or unhealthy sheep to be taken beyond the limits of the State at the point where the same sheep entered the State. The owner or owners of any sheep who shall fail or refuse to immediately remove any diseased or unhealthy sheep (when

brought into this State) when ordered to do so by any stock inspector, shall be fined $25 for each and every day that such stock is kept within the State after having been notified to remove the same by the stock inspector of the county wherein such stock is located.

Sec. 4. The provision of this act shall not apply to any of the hereinbefore mentioned stock that shall be brought into the State for the purpose of being fed through the winter months of November, December, January and February, of each year, or to any stock being shipped to market." Laws 1905, p. 268, c. 156.

The plaintiff, W. P. Reser, is a resident of Washington and the owner of 100 head of sheep, which were driven into Umatilla County, in this State, for the purpose of pasturage in the spring of 1905. In July of that year the stock inspector threatened to take possession of the sheep and sell them as provided in the act referred to unless the tax of 20 cents a head was paid thereon. In order to avoid such seizure and sale, the plaintiff paid the tax under protest, and the same was converted into the general fund of the county. The plaintiff thereafter brought this action to recover the amount so paid, on the ground that the law under which it was exacted was unconstitutional and void, because not in accord with Section 1, Art. IX, of the Constitution of Oregon, which provides that the rate of assessment and taxation shall be equal and uniform. The plaintiff had judgment in the court below, and the defendant appeals.                                    Affirmed.

For appellant there was a brief over the names of *A. M. Crawford*, Attorney General, and *Gilbert Walter Phelps*, District Attorney, with an oral argument by *Mr. Phelps*.

For respondent there was a brief with oral arguments by *Mr. Oscar Cain* and *Mr. Herbert C. Bryson*.

Mr. Chief Justice Bean delivered the opinion.

1. It is conceded by the defendant county that if the law in question is a revenue measure, and the sum required to be paid by the owners of foreign sheep a tax, it is void, because the tax is not uniform or levied according to value. But the conten-

tion is that the law was designed simply to regulate and control the pasturage of foreign sheep, and comes within the police power. There is no doubt that the keeping of live stock within the State is under police regulation. The State may prohibit the running at large of such animals, and compel their owners to keep them within their own inclosures, and it has been held that it may prohibit their grazing or being herded within certain prescribed territory: 2 Tiedeman, State and Federal Control, 838; *Sifers* v. *Johnson,* 7 Idaho, 798 (65 Pac. 709, 54 L. R. A. 785, 97 Am. St. Rep. 271) ; *Sweet* v. *Ballentyne,* 8 Idaho, 431 (69 Pac. 995) ; *Spencer* v. *Morgan,* 10 Idaho, 542 (79 Pac. 459).

2. And, as an incident to the power to regulate and control, it may be that the State can exact a charge or fee for the privilege of allowing stock to run at large. But we do not think the law under consideration is of that character.

3. It is sometimes difficult to distinguish between a tax and a license. Generally speaking, a tax is a charge or burden imposed on persons or property for the support of the government or for some specific purpose authorized by it. Its object is to raise revenue: Bouvier, Law Dic. A license, however, is a permission to do what would otherwise be unlawful. The fee or charge often exacted therefor is in law supposed to cover the cost of issuing the license and the expenses incident to regulating and controlling the business, although it may ultimately result in a source of revenue. To relieve a law imposing a burden or tax upon persons or property from the operation of the constitutional provision relative to taxation, it must have for its primary object the granting of some privilege or the imposing of some restraint. A license is essentially a grant of a special privilege to one or more persons, not enjoyed by citizens generally, or, at least, not enjoyed by the class of citizens to which the licensee belongs: *Home Insurance Co.* v. *City Council of Augusta,* 50 Ga. 530. "The object of a license," says Mr. Justice MANNING, "is to confer a right that does not exist without a license": *Chilvers* v. *People,* 11 Mich. 43. And Judge DEADY says that it is "a permission to do what was

unlawful at common law, or is made so by some statute or ordinance, including the one authorizing or requiring the license": *The Laundry License Case* (D. C.), 22 Fed. 703. And Mr. Justice COOLEY says that the popular, as well as the legal, understanding of the "word 'license' undoubtedly is a permission to do something which without the license would not be allowable": *Youngblood* v. *Sexton,* 32 Mich. 406 (20 Am. Rep. 654). The distinction between a tax upon a business or property and a license may be said to be that the former is exacted by reason of the fact that the business is carried on or the property is within the jurisdiction of the taxing power, and the latter is required as a condition precedent to the right to carry on such business or have such property within the jurisdiction.

4. Within these definitions a mere tax on sheep of nonresident owners cannot be said to be a license unless the payment of such tax confers some right or privilege upon such owners which otherwise would not exist. We do not understand that such is the case here. The law is entitled, "An Act to Tax All Foreign Sheep Coming Into the State of Oregon," etc., and simply provides the amount of such tax and the manner of its collection. No special privileges are granted to the nonresident owner by reason of the payment of the tax, nor is the payment of such tax made a condition precedent to the right to bring sheep into the State, if, indeed, such legislation would be valid: 21 Am. & Eng. Enc. Law (2 ed.), 799; *Farris* v. *Henderson.* 1 Okl. 384 (33 Pac. 380). Nor does the failure to pay the required tax render the pasturing of sheep in the State illegal, any more than the failure of a man to pay the taxes upon his farm renders the occupation of farming illegal. The law does not pretend to impose any restraint upon the sheep industry and no privilege is granted by its terms. The burden imposed is upon the property, and not upon the business, and applies alike to the man who brings his sheep into the State to pasture them on land of his own or that of the government and the man who brings his sheep into the State to pasture them upon the land of the State. We are therefore forced to the con-

clusion that it is essentially a revenue law and void, within the rule announced in *Ellis* v. *Frazier*, 38 Or. 462 (63 Pac. 642; 53 L. R. A. 454), because the tax is not uniform and equal, nor levied with reference to the value of the property.

And such is the conclusion reached by other courts upon substantially the same character of legislation. Thus an act of the legislature of Colorado providing that nonresidents grazing cattle in any county of the state should pay a certain fixed sum per head in lieu of all taxes was held void, because in violation of the constitutional provision that all taxes shall be uniform upon the same class of subjects: *Kiowa County* v. *Dunn,* 21 Colo. 185 (40 Pac. 357). So, also, a law providing for a special tax of a stated amount for the benefit of public roads upon all road wagons and other vehicles,. irrespective of their value, was declared invalid by the Supreme Court of Alabama: *Smith* v. *Court of County Commissioners,* 117 Ala. 196 (23 South. 141). Likewise an act requiring every corporation or company operating a railroad or any part of a railroad within the state to pay a fee of $1 a mile for each mile of track was held to contravene the provisions of the Ohio constitution, requiring equal and uniform taxation: *Railroad Co.* v. *State,* 49 Ohio St. 189 (30 N. E. 435). And in Georgia a municipal ordinance imposing a specific tax of $1 a head on each horse or mule sold by drovers in the city was declared void, because in violation of the provision of the state constitution that taxation shall be *ad valorem* and uniform on all property of the same class: *Livingston* v. *City Council of Albany,* 41 Ga. 21. So, also, an ordinance imposing on bicycles and other wheel vehicles a tax to be used for the improvement of the streets was declared to be within the inhibition of the state constitution of Illinois against double taxation, and void because unequal and not uniform: *Chicago* v. *Collins,* 175 Ill. 445 (51 N. E. 907, 49 L. R. A. 408, 67 Am. St. Rep. 224). Minnesota has a constitutional provision similar to ours, and in *State* v. *Lakeside Land Co.* 71 Minn. 283 (73 N. W. 970), it was held that a law providing for a system of taxation on mining property and products by the payment of a fixed sum per ton for all ore

mined or shipped was void, the court saying: "It would be difficult to conceive of a system of taxation more obnoxious to the constitution." Under a similar constitution the Supreme Court of Louisiana held that the legislature could not levy a tax upon cotton by the pound: *Sims* v. *Parish of Jackson,* 22 La. Ann. 440.

It follows that the judgment of the court below must be affirmed, and it is so ordered.      AFFIRMED.

MR. JUSTICE HAILEY, having been of counsel, took no part in this decision.