## HOFER v. CARSON ET AL.

(203 Pac. 323.)

**Municipal Corporations — Act Authorizing Cities to Control and Regulate Keeping of Dogs Held Valid Exercise of Police Power.**

1. General Laws of 1919, page 273, authorizing cities to control and regulate the keeping of dogs, impose license fees, etc., is not in violation of Constitution, Article XI, Section 2, or Article IV, Section 1a, as an attempt to legislate on a matter of purely local concern, such act being a valid exercise of the state's police power, since such regulation and control is a matter of equal concern to all the people of the state.

**Municipal Corporations—State Does not Surrender Police Power by Delegating Exercise of Same to City.**

2. Though the state may delegate to a city the right to exercise its police power, it does not thereby surrender any part of such power; the legislative power of the state, whether exercised by the legislature or by the people at large through the initiative and referendum, being paramount and supreme, whether the matter concerns the state at large or the city alone.

**Constitutional Law—Statute cannot be Set Aside Unless Clearly Unconstitutional.**

3. No presumption of law can be indulged against the validity of a statute which, being presumed to be constitutional, cannot be set aside unless it clearly and unmistakably violates some constitutional provision.

102 Or.—35

Courts—In View of Federal Court Decisions Which are Binding, Law
    Authorizing Summary Destruction of Unmuzzled Dogs are not
    in Violation of Due Process Clause.

    4. In view of federal court decisions, which, on the question
whether a state law contravenes the federal Constitution, are bind-
ing on every state court, General Laws of 1919, page 273, authoriz-
ing the passage of city ordinances for the summary destruction of
unmuzzled dogs, without notice to the owner, is not in violation of
Constitution of the United States, Amendment 14, as depriving the
owner of his property without due process of law, though dogs are
recognized as property under Sections 1950, 9357 and 9358, Or. L.

Licenses—Act Authorizing Dog License Fees Held not Unconstitu-
    tional.

    5. General Laws of 1919, page 273, authorizing cities to impose
license fees for keeping dogs, is not in violation of Constitution
Article IX, Section 1, requiring that all taxes be levied and collected
under general laws operating uniformly throughout the state; the
purpose of the act being not to impose a tax, but to license dogs
and regulate the manner in which they may be kept within the state.

Constitutional Law — Act Authorizing Reimbursement for Sheep
    Killed or Injured by Dogs not Unconstitutional as Granting
    Special Privilege to Owners of Sheep.

    6. General Laws of 1919, page 273, authorizing cities to impose
dog license fees to create a fund to reimburse owners of sheep and
other domestic animals killed or injured by dogs, does not violate
Constitution Article I, Section 20, by granting special privileges to
such owners; the act merely protecting them from the destruction
of their property.

From Marion: GEORGE G. BINGHAM, Judge.

Department 1.

The plaintiff, a resident and taxpayer of the City
of Salem, brought these proceedings by the filing of a
complaint in which he seeks to enjoin the defendants,
the district attorney, sheriff, and county clerk of
Marion County, Oregon, chief of police of the City of
Salem, and constable of Salem district, from en-
forcing the provisions of an act of the legislative
assembly of the State of Oregon set forth in Chapter

    4. On constitutionality of statute or ordinance providing for de-
struction of animals, see notes in 97 Am. Dec. 881; 8 A. L. R. 74.
    5. On constitutionality of tax on dogs for benefit of sheep own-
ers, see notes in Ann. Cas. 1912D, 879; 17 L. R. A. (N. S.) 855; 13
A. L. R. 829.

186 of the General Laws of Oregon, 1919. In his complaint the plaintiff alleges that there are now two ordinances in full force and effect in the City of Salem relating to the regulation, control and licensing of dogs, but as the validity of said ordinances is not brought into question by any allegation of the complaint, no further reference to them is necessary other than to say that these ordinances cover largely the scope of the act under consideration. The plaintiff alleges that he is the owner of a bull terrier, of the approximate value of $50, kept by him within the City of Salem, which is subject to taxation and upon which he pays taxes. The complaint alleges five grounds upon which he claims that said act of the legislative assembly under which he alleges the defendants are assuming to act, is unconstitutional, and that unless the defendants are restrained from enforcing the act, the plaintiff will be subjected to prosecution for the violation of its provisions and will suffer irreparable loss. A general demurrer to the complaint was filed upon the ground that the complaint does not state facts sufficient to constitute a cause of suit. The demurrer was sustained and an order was made dismissing plaintiff's suit. From this order the plaintiff has appealed.      AFFIRMED.

For appellant there was a brief and oral argument by *Mr. Allan Bynon.*

For respondents there was a brief and oral argument by *Mr. William H. Trindle.*

*Mr. Frank S. Grant* and *Mr. L. E. Latourette,* *Amici Curiae.*

RAND, J.—The plaintiff contends that under Article XI, Section 2, and Article IV, Section 1a of the Constitution of the state, the licensing and control of dogs kept in cities and towns are matters of purely local and municipal concern; that the power to legislate thereon resides exclusively in the legal voters of the city or town and not in the legislature of the state, and that the act in question, Chapter 186 of the General Laws of Oregon, 1919, is therefore unconstitutional and void so far as it attempts to authorize the licensing and control of dogs kept in cities and towns.

1. The enactment of laws providing for the control and regulation of the mode of keeping dogs, imposing the payment of license fees upon the owners and authorizing the summary killing of dogs in violation of law is an exercise of the police power of the state and is within the legitimate sphere of the legislative power. The matter of licensing dogs is of as much concern to the people throughout the state at large as it is to the people in any particular locality or community within the state. The keeping of dogs is not confined to cities and towns, but is coextensive with the boundaries of the state. The necessity of regulating the manner in which dogs shall be kept and controlled is as urgent without, as it is within the limits of cities and towns, as their proclivity to do mischief is as pronounced in one instance as the other. It is not, therefore, a matter of local concern, but it is one of equal concern to all of the people throughout the state.

It is the wisdom of the legislature and not the judgment of the court which determines the necessity for legislation upon any particular subject and the man-

ner in which the laws shall be enforced. The exercise by the state of its power to license dogs and to provide for their summary disposal when kept in violation of law is a valid exercise of its police power just as much so as it is for the state to legislate for the purpose of preventing the spread of contagious diseases, the use of false weights and measures, the adulteration of food, the regulation of railroads and other public utilities, or the doing of anything which injuriously affects the public health and safety or is detrimental to the morals, welfare and happiness of the people of the state.

2. Although the state may delegate to a city the right to exercise the police power, we are not able to give our assent to any suggestion that there has been any surrender of any part of the police power of the state to any city, town or municipality within the state. As to those matters which are local, special or municipal in character and which do not concern the people of the state as a whole or affect its welfare the right of the legal voters of a city or town to legislate thereon, when not in conflict with a general law of the state, is unquestioned. But, whether the matter concerns the state at large or the municipality, city or town alone, the legislative power of the state when exercised by the legislature or by the people of the state at large through the initiative and referendum, is paramount and supreme. This is in accordance with the meaning and effect of the decisions of this court in *Rose* v. *Portland,* 82 Or. 541, 568, 569, 573 (162 Pac. 498); *Lovejoy* v. *Portland,* 95 Or. 459, 468 et seq. (188 Pac. 207); *Colby* v. *Medford,* 85 Or. 485, 534 (167 Pac. 487); *Hillsboro* v. *Public Service Commission,* 97 Or. 320, 336 (187 Pac.

617, 192 Pac. 390), and *Tichner* v. *Portland*, 101 Or. 294 (200 Pac. 466, 468).

3. No presumption of law can be indulged against the validity of a statute. Every statute is presumed to be constitutional. No court is authorized to set aside a statute unless it clearly and unmistakably appears that the statute does plainly and unquestionably violate some provision of the constitution.

4. The plaintiff insists that the act in question, Chapter 186, General Laws of Oregon, 1919, by its operation deprives a person of his property without due process of law contrary to and in violation of the fourteenth amendment to the Constitution of the United States of America. Chapter 186, General Laws of Oregon, 1919, in effect provides for the holding of an election in any county, election precinct or incorporated city in the state upon petition of a certain number of legal voters thereof to determine by vote whether dogs shall be permitted to run at large in such county, precinct or incorporated city and if at such election the majority of the votes cast are against permitting dogs to run at large, after sixty days following such election it shall be unlawful for dogs to run at large in such county, city or precinct and when any dog is found running at large and away from the premises of the owner thereof, without a muzzle securely fastened thereon, the owner of such dog shall be subject to a fine of $10 for the first offense and $25 for each subsequent offense. It is made the duty of every chief of police, constable, sheriff or deputy to kill all dogs found running at large without having such muzzle securely fastened thereon, and not in the company and under the control of the owner or keeper. The act also provides

that the owner of any dog shall pay a license fee
of either one or two dollars to the county clerk of
the county according to the sex of the dog and upon
payment of such license fee the county clerk shall issue
a license and deliver a leather collar stamped with the
year and number of the license thereon, and any dog
not wearing such collar shall be considered an outlaw
and shall be killed by the officers designated if found
running at large. The act provides that the moneys
paid for fines and for licenses when collected shall
be paid into the county treasury and be kept for a
special fund and from this fund the costs of prose-
cution and damage done to domestic livestock by dogs
in such county, precinct or city shall be paid. The
act also provides that any owner or keeper of dogs
who neglects to apply for or fails to pay the license
fee during the month of January in each year shall
pay a fine of $10, and that the owner or owners of
any sheep, goats or other domestic animals killed or
injured by any dogs, may, within ten days after such
killing or injury present to the board of county com-
missioners a verified statement and account of the
killing or injury of such animals and the amount of
damage claimed therefor. The act also provides that
upon the presentation of such claim the board shall
allow or disallow the same as it may deem proper,
and if allowed, a warrant shall be drawn against the
said fund for the amount of the damages allowed.

In support of his contention the plaintiff cites the
case of *Rose* v. *Salem,* 77 Or. 77 (150 Pac. 276). That
case was largely based upon the assumption that the
statute having declared dogs to be personal property
and having made them the subject of larceny, the
right of ownership in dogs was thereby placed on

the same plane of ownership as other personal property in general, and, therefore, the summary destruction of a dog without notice to the owner for a violation of a city ordinance would operate to deprive the owner of his property without due process of law within the meaning of the fourteenth amendment. The right of ownership in dogs has always been recognized as a right of property in this state. Section 9358, Or. L., as passed by the legislature in 1860 recognized such right by the use of the words "the owner of any dog." In 1889, the legislature amended Section 1950, Or. L., by adding to the statute the word "dog" thereby making a dog the subject of larceny in this state. In 1907, the legislature by Section 9357, Or. L., declared a dog to be personal property and in respect to this section, it was in effect held in *McCallister* v. *Sappingfield,* 72 Or. 422, 425 (144 Pac. 432), that the enactment of this section did not create a new right but was a legislative recognition of a right which existed at and prior to its passage. The court said:

"This enactment is but a legislative declaration of the present-day common law, found in the decisions of most of the states of the Union. This modern conception of the dog as personal property, whether embodied in legislative enactments or judicial decisions, is the natural evolution of the status of the dog as known at common law which considered the animal to be property, yet of an inferior sort: *Woolf* v. *Chalker,* 31 Conn. 121 (81 Am. Dec. 175); *Jemison* v. *Southwestern R. R. Co.,* 75 Ga. 444 (58 Am. Rep. 476); *State* v. *Topeka,* 36 Kan. 76 (12 Pac. 310, 59 Am. Rep. 529); 1 R. C. L. 1113."

If it were not for the fact that practically all of the decisions of the courts, including the Supreme Court of the United States, have decided this question

adversely to the decision made in *Rose* v. *Salem, supra,* we would be constrained to apply to this case the doctrine there applied, if we were now passing upon a city ordinance and not an enactment by the legislative assembly of the state.

The question of whether a law enacted by the legislature of a state contravenes the federal Constitution is ultimately a question for the federal courts to determine, and their decision upon that question is binding upon every state court.

In *Sentell* v. *New Orleans C. R.,* 166 U. S. 698 (41 L. Ed. 1169, 17 Sup. Ct. Rep. 693, see, also, Rose's U. S. Notes), after citing with approval excerpts from many authorities upholding as constitutional, statutes and ordinances equally as drastic as the provisions under consideration here and some of them containing identical provisions complained of in the act in question, the court said:

"Even if it were assumed *that dogs are property in the fullest sense of the word,* they would still be subject to the police power of the state, and might be destroyed or otherwise dealt with as in the judgment of the legislature is necessary for the protection of its citizens. That a state, in a *bona fide* exercise of its police power, may interfere with private property, and even order its destruction, is as well settled as any legislative power can be, which has for its objects the welfare and comfort of the citizen. For instance, meats, fruits, and vegetables do not cease to become private property by their decay; but is is clearly within the power of the state to order their destruction in times of epidemic, or whenever they are so exposed as to be deleterious to the public health. There is also property in rags and clothing; but that does not stand in the way of their destruction in case they become infected and dangerous to the public health. No property is more sacred than one's home, and yet a house may be pulled down

or blown up by the public authorities, if necessary to avert or stay a general conflagration, and that, too, without recourse against such authorities for the trespass: *Bowditch* v. *Boston,* 101 U. S. 16, [25 L. Ed. 980]; *Mouse's Case,* 12 Coke, 63; *British Cast Plate Mfrs.* v. *Meredith,* 4 T. R. 794, 797; *Stone* v. *New York,* 25 Wend. 157; *Russell* v. *New York,* 2 Denio, 461.

"Other instances of this are found in the power to kill diseased cattle, to destroy obscene books or pictures, or gambling instruments, and, in *Lawton* v. *Steele,* 152 U. S. 133, it was held to be within the power of a state to order the summary destruction of fishing nets, the use of which was likely to result in the extinction of valuable fisheries within the waters of the state.

"It is true that under the 14th Amendment no state can deprive a person of his life, liberty, or property without due process of law; but in determining what is due process of law we are bound to consider the nature of the property, the necessity for its sacrifice, and the extent to which it has heretofore been regarded as within the police power. So far as property is inoffensive or harmless, it can only be condemned or destroyed by legal proceedings, with due notice to the owner; but so far as it is dangerous to the safety or health of the community, due process of law may authorize its summary destruction. As was said in *Jenkins* v. *Ballantyne,* 8 Utah, 245, 247 [30 Pac. 760, 16 L. R. A. 689]: 'The emergency may be such as not to admit of the delay essential to judicial inquiry and consideration, or the subject of such action and process may be of such a nature, or the conditions and circumstances in which the act must be performed to effect the protection and give effect to the law may be such, as to render judicial inquiry and consideration impracticable.'"

In the same case the court said:

"It is purely within the discretion of the legislature to say how far dogs shall be recognized as prop-

erty, and under what restrictions they shall be per-
mitted to roam the streets. * * There is nothing in
this law that is not within the police power, or of
which the plaintiff has a right to complain.''

See, also, *Nicchia* v. *New York,* 254 U. S. 228 (13
A. L. R. 826, 65 L. Ed. ——, 41 Sup. Ct. Rep. 103).

The question involved here is a federal question
and we think that the decision just cited is decisive
upon that question. It would be not only futile, but
it would be highly improper for this court to decide
any federal question contrary to the decisions of the
Supreme Court of the United States. The authorities
upon this question are collated in 8 A. L. R. 74, where
it is stated that—

''Statutes and ordinances regulating the running
at large of dogs, usually requiring their registration
or licensing, prohibiting their running at large unless
muzzled or collared, and providing for their summary
destruction when found running at large in violation
of the statute or ordinance, have generally been sus-
tained as a valid exercise of the police power.''

Cited, in support thereof, are the following cases:
*Sentell* v. *New Orleans & C. R. Co.,* 166 U. S. 698
(41 L. Ed. 1169, 17 Sup. Ct. Rep. 693) ;. *Sibley* v. *Las-
trico,* 122 Iowa, 211 (97 N. W. 1174); *State ex rel.
Curtis* v. *Topeka,* 36 Kan. 76 (12 Pac. 310, 59 Am.
Rep. 529); *Commonwealth* v. *Markham* (Ky.), 7 Bush,
486; *Hagerstown* v. *Witmer,* 86 Md. 293 (37 Atl. 965,
39 L. R. A. 649); *Blair* v. *Forehand,* 100 Mass. 136
(1 Am. Rep. 94, 97 Am. Dec. 82); *Morewood* v. *Wake-
field,* 133 Mass. 240; *Julienne* v. *Jackson,* 69 Miss. 34
(10 South. 43, 30 Am. St. Rep. 526); *Morey* v. *Brown,*
42 N. H. 373; *Fox* v. *Mohawk & H. River Humane
Soc.,* 165 N. Y. 517 (59 N. E. 353, 80 Am. St. Rep.
767, 51 L. R. A. 681); *People ex rel. Renshaw* v.

*Gillespie,* 25 App. Div. 91 (48 N. Y. Supp. 882); *People ex rel. Westbay* v. *Delaney,* 73 Misc. 5 (130 N. Y. Supp. 833); *Mowery* v. *Salisbury,* 82 N. C. 175; *State* v. *Clifton,* 152 N. C. 800 (67 S. E. 751, 28 L. R. A. (N. S.) 673); *Litchville* v. *Hanson,* 19 N. D. 672 (124 N. W. 1119, Ann. Cas. 1912D, 876); *Roberson* v. *Gibson,* 62 Okl. 306 (162 Pac. 1120); *Monroe Borough* v. *Walborn,* 17 Pa. Dist. R. 1053; *Jenkins* v. *Ballantyne,* 8 Utah, 245 (30 Pac. 140, 16 L. R. A. 689); *State* v. *Smith,* 72 Vt. 140 (47 Atl. 390); *McDermont* v. *Taft,* 83 Vt. 249 (75 Atl. 276, 138 Am. St. Rep. 1083); *McNair* v. *Collins,* 27 Ont. L. Rep. 44 (Ann. Cas. 1913C, 964); *Haller* v. *Sheridan,* 27 Ind. 494; *Leach* v. *Elwood,* 3 Ill. App. 453; *Walker* v. *Towle,* 156 Ind. 639 (59 N. E. 20, 53 L. R. A. 749); *Gibson* v. *Harrison,* 69 Ark. 385 (63 S. W. 999, 54 L. R. A. 268); *Fincher* v. *Collum,* 2 Ga. App. 745 (59 S. E. 22).

In 1 R. C. L. 1128, it is said:

"Where provision is made for the summary destruction of dogs kept in violation of law, it is held with great unanimity by the courts that such regulations, no matter how stringent in character, nor how summary the proceedings, are entirely within legislative power, and free from constitutional objection, though the property of the owner is destroyed without notice or hearing in the execution of the law." Citing *Nehr* v. *State,* 35 Neb. 638 (53 N. W. 589, 17 L. R. A. 771); *State* v. *Kelley,* 86 Vt. 237 (84 Atl. 861, 42 L. R. A. (N. S.) 437), and other authorities.

"Thus the courts have declared to be valid statutes and ordinances providing that all dogs shall be licensed, registered, etc., and that any dog found at large in violation of such requirement may be killed by any police officer, or other person."

*Dickerman* v. *Consolidated R. Co.,* 79 Conn. 427 (65 Atl. 289, 8 Ann. Cas. 417); *Walker* v. *Towle,* 156

Ind. 639 (59 N. E. 20, 53 L. R. A. 749); *Chapman* v.
*Decrow,* 93 Me. 378 (45 Atl. 295, 72 Am. St. Rep.
357); *Julienne* v. *Jackson,* 69 Miss. 34 (10 South. 43,
30 Am. St. Rep. 526); *State* v. *Clifton,* 152 N. C. 800
(67 S. E. 751, 28 L. R. A. (N. S.) 673); *Whitfield* v.
*Paris,* 84 Tex. 431 (19 S. W. 566, 31 Am. St. Rep. 69,
15 L. R. A. 783); *Heisrodt* v. *Hackett,* 34 Mich. 283
(22 Am. Rep. 529); *Wright* v. *Clark,* 50 Vt. 130 (28
Am. Rep. 496); *McDerment* v. *Taft,* 83 Vt. 249 (75
Atl. 276, 138 Am. St. Rep. 1083); *McNair* v. *Collins,*
27 Ont. L. Rep. 44 (Ann. Cas. 1913C, 964).

5. Plaintiff's next contention is that his dog was
regularly assessed and taxed as personal property
and that he paid the tax thereon; that under the act
complained of he would be compelled to pay an addi-
tional sum as a license fee which in reality is not a
license fee but a tax levied wholly for the purpose
of raising revenue to create and maintain a "dog
fund." If, in fact, the burden imposed upon the
plaintiff under the act is a tax and not a license fee
the act cannot be sustained because of the constitu-
tional provision that—

"All taxes shall be levied and collected under gen-
eral laws operating uniformly throughout the state."
Article IX, Section 1.

In support of this contention plaintiff cites and
relies mainly upon the cases of *Ellis* v. *Frazier,* 38 Or.
462, 468 (63 Pac. 642, 53 L. R. A. 545), and *Reser* v.
*Umatilla County,* 48 Or. 326 (86 Pac. 595, 120 Am. St.
Rep. 815). In *Ellis* v. *Frazier, supra,* the question
presented was whether an act of the legislative
assembly which imposed in certain counties a tax of
$1.25 on bicycles which, when collected was to be
deposited with the county treasurer in a fund to be
known as the "path fund" and the moneys, so col-

lected, were to be used for the construction, mainte-
nance and repair of paths for the use of bicycles and
pedestrians along the public highways, was in con-
travention of Article IX, Section 1 of the organic
law of the state as well as of other constitutional pro-
visions. The act there under consideration provided
that it should apply to only ten of the then thirty-
three counties in the state. The act was therefore,
as the court there held, a local law. It was also held
that the imposition of a uniform tax of $1.25 upon
all bicycles, the value of the bicycles not being the
same, destroyed the required uniformity in the assess-
ment and rendered the rate of taxation unequal and
that the imposition of the tax was therefore unconsti-
tutional. In arriving at this conclusion the court
first decided that the collection of $1.25 upon each
bicycle was a tax and not a license fee. In deter-
mining that it was a tax and not a license fee, the
court based its determination upon the consideration,
that the use of bicycles does not necessarily tend to
the destruction of highways and it is not necessarily
dangerous to the public; that the act did not attempt
to regulate the rate of speed or require the attach-
ment of a bell, or the ringing of a bell, or the carry-
ing of a lantern at night to avoid collision; that the
statute was not enacted for protection; that from
a consideration of the entire act it was evident that
the primary purpose of the act was to raise revenue
in the nature of a tax and that the burden imposed
was not an exercise of the police power of the state
but an exercise of its taxing power.

In *Reser* v. *Umatilla County, supra,* the court held
that the act then under consideration, was not for
licensing purposes, but was a revenue law imposing
a burden or tax upon foreign sheep; that the owners

of such sheep by the payment of the tax, acquired no right or privilege which they did not legally possess without the payment of the tax; that nonresident owners of sheep had a legal right to pasture sheep within the state without the payment of a tax, and that failure to pay the tax did not make the pasturing of such sheep illegal.

In each of these cases it was held that the burden imposed was a tax and not a license, and therefore neither case supports plaintiff's contention. In this case the purpose of the act under consideration is not to impose a tax but to license dogs and to regulate the manner in which they may be kept within the state. This is a matter entirely within the police power of the state and is a valid exercise of that power.

6. It is also contended that the act under consideration is in violation of Section 20, Article I of the Constitution of the state, as granting to owners of sheep and other domestic animals "privileges or immunities which, upon the same terms, shall not equally belong to all citizens."

This involves the question of the power of the legislature to dispose of the moneys collected from the payment of license fees and from fines imposed for violations of the act, but placing the same in the custody of the county treasurer to reimburse the owners of domestic animals in the county for losses sustained through the death or injury of such animals caused by dogs.

Mr. Freund, in his work on Police Power, Sections 433 and 434, states the law as follows:

"Where the law levies contributions from one class to make up an indemnity fund in favor of another, without any connection between the business of those

assessed and the loss to be provided against, the compulsion is without justification."

But he also says:

"The controlling consideration is the existence of a risk or danger, which the police power may seek to minimize; and it is reasonable that those who create or maintain the risk or danger for their own benefit should consent to the most effectual means of obviating its harmful consequences; and collective responsibility is a wise and conservative method of meeting the risk, and its imposition should be allowed as a valid condition of the right of keeping a dangerous instrument."

He then says:

"Upon these principles indemnity is provided under the laws of several states (naming in the footnote New York, Illinois, Ohio, Michigan and Indiana) for the loss of sheep killed by dogs. A tax is levied for the keeping of every dog upon its owner, and the amount thus collected is constituted a fund for the payment of damages resulting from such loss."

This law was sustained, the author says, in *Tenney v. Lens*, 16 Wis. 566, on the ground that the keeping of dogs is under the absolute control of the legislature and that right may be conditioned upon the payment of a license. In *Van Horn* v. *People*, 46 Mich. 183 (9 N. W. 246, 41 Am. Rep. 159), and *Holst* v. *Roe*, 39 Ohio St. 340 (48 Am. Rep. 459), the legislation was upheld as an exercise of the police power as distinguished from the taxing power and in *Cooley* v. *Board of Wardens*, 12 How. 299 (13 L. Ed. 996), it was sustained, because it was for the protection of an important industry, which was a legitimate object of legislative action and the legislature were the judges of what means are best calculated to accomplish the object.

Plaintiff cites no case to support his contention except the dissenting opinion in the case of *McGlone* v. *Womack*, 129 Ky. 274 (111 S. W. 688, 17 L. R. A. (N. S.) 860), while the majority opinion in that case is cited by the respondents as authority to sustain the act.   We agree with what was said by the majority of the court as follows:

"As we view it, the statute does not confer any special privilege on the owners of sheep.   It merely protects these owners from the destruction of their property by dogs.   It is the duty of the state to protect every citizen in his life, liberty, and property; and it certainly is within the competency of the legislature to exercise the police power of the state to protect all property against the ravages of destructive animals.   The question as to how this is to be done and what property is to be so protected is a matter of legislative discretion.   Undoubtedly the sheep industry is a most important one to the whole state.   All of our citizens are interested in an industry which supplies the market with wholesome meat, provides means of obtaining warm and comfortable clothing, and at the same time furnishes labor to the otherwise unemployed.   It is only necessary to allude to this phase of the question.   The importance of the industry as a whole is most obvious.   It is equally obvious that sheep are particularly liable to the ravages of dogs.   They have neither the fleetness to escape, nor the courage to defend themselves from attack, and their silent suffering enables the dog to prey upon them without any danger that the owner will be warned of the destruction of his property by the outcry of the dying animal.   No other domestic animal that we can call to mind is so liable to destruction by dogs as the sheep.   It therefore seems to us clearly the duty of the state, if the furtherance of the sheep industry is a desirable end, to so regulate the ownership of dogs as to protect the sheep from destruction by these animals.   The statute is cer-

tainly a reasonable one, and lays only a small burden upon the owner of each dog; and, in effect, it only requires the owner to make good the damage done by his property. The fact that sheep are generally killed at night when it is impossible to ascertain the owner of the dog committing the ravages makes it necessary, if protection is to be had, through this channel at all, that each owner of a dog should be required to contribute a small amount to a common fund dedicated to the remuneration of owners of sheep killed by unknown dogs. As said before, this is simply requiring the owners of dogs to make good the ravages of dangerous animals kept by them; and no citizen has just cause of complaint, if he keeps animals destructive to the property of others, that he is required to make good the damage done by them. The status, in truth, is but an enforcement of the maxim, '*Sic utere tuo ut alienum non laedas*,' and, as such, its constitutionality is beyond successful question.''

What is said here is not intended to apply to statutes and ordinances providing for the impounding and sale of cattle, horses and the like. In such cases a different rule prevails.

For the reasons above stated, the judgment of the lower court is affirmed and it is so ordered.

AFFIRMED.

BURNETT, C. J., and McBRIDE and HARRIS, JJ., concur.