## No. 17,868.

HENRY THIELE, FOR HIMSELF AND OTHERS SIMILARLY
SITUATED *v*. CITY AND COUNTY OF DENVER, ET AL.
(312 P. [2d] 786)

Decided June 10, 1957.   Rehearing denied July 15, 1957.

Mr. Omar Garwood, Mr. Donald Marshall, Mr. Frederick E. Dickerson, Mr. Phillip Rossman, Mr. George Louis Creamer, for plaintiff in error.

Mr. John C. Banks, City Attorney, Mr. Horace N. Hawkins, Jr., Deputy, for defendants in error.

*En Banc.*

Mr. Justice Sutton delivered the opinion of the Court.

The parties appear here in the same order as in the trial court and we so refer to them or by name.

In a class action plaintiff challenges the validity of and seeks an injunction against enforcement of Councilman's Bill No. 32, Series 1955, Referred Ordinance No. 80, Series 1955, of the City and County of Denver, popularly called the "Dog Leash Law" or "Leash Law." Trial was to the court following which a "Judgment and Order" dismissing the complaint with costs was entered in favor of defendants. Motion for a new trial was dispensed with.

On writ of error plaintiff urges the following grounds for reversal:

1. That the ordinance is void as violating due process of law, taking property (allegedly in a situation not involving the police power) without notice or a hearing.

2. That the ordinance is procedurally deficient, violating both the Charter and State Constitutional provisions relating to the adoption of measures by referendum and the publication thereof.

3. That enforcement of the ordinance is improperly delegated.

4. That the trial court erred in failing to make findings of fact under Rule 52 R.C.P.

In 1950 the City and County of Denver enacted Ordinance No. 279 entitled "A Bill for An Ordinance Relating to Dogs: The Vaccination and Registration of Dogs; and a Denver Municipal Dog Pound." This ordinance became "Code Section 753 (Ordinance 288, Series 1950)" and provided in part in Sections 8 through 14 for the creation of a dog pound, the impounding of all dogs not bearing proper vaccination tags; notice to owners and a three day impoundment period unless sooner redeemed by owners; payment of a $3.00 fee upon presentation of vaccination proof by the owner or by a buyer after the waiting period; and for the disposition of unclaimed and unsold dogs. The notice provision reads:

"Sec. 10. Notification of Owner of Impounded Dogs. Upon the impounding of any dog, it shall be the duty of the Manager or his authorized representative to notify the owner from whom the dog was taken, if the owner is known. If the owner is not known, there shall be posted in the Denver Municipal Dog Pound a notice containing a description of the dog impounded."

It appears that the rabies tag required under this ordinance also serves as a license tag for dogs in the City of Denver.

In 1952 the City adopted Code Section 754 (Ordinance 254, Series 1952) also known as "Councilman's Bill No. 274, Series 1952" which in part states that it is unlawful to permit any "vicious dog" to be or run at large. It provides for notice and hearing to dog owners whose animals are in alleged violation thereof. This ordinance appears to have been repealed by implication by the 1955 enactment of the "Leash Law" which affects all dogs. Plaintiff's allegation of conflict, urged in his argument here, as between these two ordinances, would seem therefore to be without substance. Accordingly, Code

Section 754 will not be further considered in this opinion.

The Leash Law title reads:

"A BILL FOR AN ORDINANCE AMENDING THE REVISED MUNICIPAL CODE BY ADDING THERETO A NEW ARTICLE 752 MAKING IT UNLAWFUL FOR ANY PERSON WHO KEEPS ANY DOG TO PERMIT THE SAME TO RUN AT LARGE, AND PROVIDING FOR THE IMPOUNDING AND DISPOSITION OF DOGS FOUND RUNNING AT LARGE, SUCH AMENDMENT TO BE OPERATIVE AND EFFECTIVE JULY 1, 1955; AND PROVIDING FOR SUBMISSION OF SUCH ORDINANCE AT THE GENERAL MUNICIPAL ELECTION TO BE HELD ON THE THIRD TUESDAY, IN MAY, 1955."

Section 1 of this ordinance reads:

"1. It shall be unlawful for any owner, possessor, or person who keeps any dog to permit the same to run at large."

This ordinance was submitted to, and approved by a vote of the people before becoming effective July 1, 1955. It provides a definition of running at large; delegates to the Chief of Police and his officers the duty of enforcement; provides for impoundment of dogs found running at large without the necessity of filing a complaint and for their disposition in accordance with the provisions of Article 753 of the Code.

The gist of plaintiff's several contentions appears to be that dogs are a form of personal property and though a city may reasonably provide for a leash law, it may not (a) incorporate the penalty by reference and (b) confiscate and destroy such property in the manner provided in Code Section 753 supra.

Though almost human in many ways because of their intelligence and loyalty, and the recognition of such virtues by their human masters as indicated by the love, affection, and occasional bequests and legacies bestowed upon them, nevertheless such attributes do not raise canines to the level occupied by *homo sapiens*. Thus the

constitutional liberties guaranteed citizens are not *a fortiori* a privilege extended to the dog world. Even the most soulful eyed canine has rights, privileges and protection only within his master's shadow as provided by law. We accordingly proceed to examine the status of man's best friend as the common, constitutional and statute law have decreed in its behalf.

■ At common law dogs were recognized as property of an inferior sort which for some purposes entitled them to less regard and protection than property in other animals. 2 Am. Jur. 692-694, Sec. 5-7. The rights of an owner were often spoken of as being "qualified property rights." For example, in the absence of statute dogs were not regarded as the subject of larceny, nor were they subject to taxation, though an action would lie for their conversion or injury. The modern trend is to accord to dogs a full property status. 3 C.J.S. 1086, Sec. b; also see 3 C.J.S. 1085, Domestic Animals, Sec. 3. In Colorado dogs are by statute the subject of larceny. '53 C.R.S., 40-5-3. Statutes and ordinances regulating the running at large of dogs and providing for their summary destruction if in violation thereof, have generally been sustained as a valid exercise of the police power.

■ Through all the progress in its status, however, and though now accorded a full property status in our state, the original term of "qualified property rights" in dogs still has a valid standing. The term "qualified" is used because a dog as property is subject to a different application of the state's police power than most other kinds of personal property. This is due to the nature of dogs and the problems confronting society in how to establish a *modus vivendi* therewith. All property is held by its owners subject to the inherent police power of the state and cannot be used or held in such a way as to injure others or their property. Though many of Denver's estimated 30,000 to 50,000 dog owners undoubtedly carefully and properly regulate and restrain their animals so that neighbors and citizens generally are not

endangered or annoyed thereby, others obviously allow their dogs to roam at will requiring the exercise of the state's power as herein complained of. To our knowledge no one has yet invented a better substitute than a reasonable dog leash law to handle dogs running at large to the danger or annoyance of a city's inhabitants.

We quote with approval the following from *Sentell v. New Orleans and Corrallton Railroad Co.,* 166 U. S. 698:

"The very fact that they are without the protection of the criminal laws shows that property in dogs is of an imperfect or qualified nature, and that they stand, as it were, between animals *ferae naturae* in which, until killed or subdued, there is no property, and domestic animals, in which the right of property is perfect and complete. They are not considered as being upon the same plane with horses, cattle, sheep and other domesticated animals, but rather in the category of cats, monkeys, parrots, singing birds and similar animals kept for pleasure, curiosity or caprice. They have no intrinsic value, by which we understand a value common to all dogs as such, and independent of the particular breed or individual. Unlike other domestic animals, they are useful neither as beasts of burden, for draught (except to a limited extent), nor for food. They are peculiar in the fact that they differ among themselves more widely than any other class of animals, and can hardly be said to have a characteristic common to the entire race. While the higher breeds rank among the noblest representatives of the animal kingdom, and are justly esteemed for their intelligence, sagacity, fidelity, watchfulness, affection, and, above all, for their natural companionship with man, others are afflicted with such serious infirmities of temper as to be little better than a public nuisance. All are more or less subject to attacks of hydrophobic madness.

"As it is practically impossible by statute to distinguish between the different breeds, or between the valuable and the worthless, such legislation as has been

enacted upon the subject, though nominally including the whole canine race, is really directed against the latter class, and is based upon the theory that the owner of a really valuable dog will feel sufficient interest in him to comply with any reasonable regulation designed to distinguish him from the common herd. Acting upon the principle that there is but a qualified property in them, and that, while private interests require that the valuable ones shall be protected, public interests demand that the worthless shall be exterminated, they have, from time immemorial, been considered as holding their lives at the will of the legislature, and properly falling within the police powers of the several States. Laws for the protection of domestic animals are regarded as having but a limited application to dogs and cats; and, regardless of statute, a ferocious dog is looked upon as *hostis humani generis,* and as having no right to his life which man is bound to respect." P. 701, 702.

In that case the court upheld the constitutionality of a law in Louisiana requiring dogs to be placed on the assessment rolls and limiting recovery by the owner for their loss to the value fixed by the owner himself for assessment purposes.

The Sentell case notes several jurisdictions where the right of summary destruction of dogs by governmental authority has been sustained, and goes on to point out that even if dogs are property in the fullest sense of the word, still they are subject to the police power, saying "That a State, in a *bona fide* exercise of its police power, may interfere with private property, and even order its destruction * * *." For example, "No property is more sacred than one's home, and yet a house may be pulled down or blown up by the public authorities, if necessary to avert or stay a general conflagration, and that, too, without recourse against such authorities for the trespass."

Admittedly the City and County of Denver has jurisdiction over dogs under its police power. *McPhail*

*v. City and County of Denver*, 59 Colo. 248, 149 Pac. 257. The cases cited by plaintiff relating to written notice and hearing before owners can be fined or punished for failure to restrain dogs, such as the McPhail case supra, are not in point on the issues of this case, for this ordinance operates on the dog, not on the owner. *Jenks v. Stump*, 41 Colo. 281, 93 Pac. 17, relating to notice and hearing involving "animals" must be limited to livestock as involved in that case and is not applicable to the circumstances now before us. A reasonable equally applied charge for a pound fee as in this ordinance is both proper and legal. See *The City of Pueblo v. Kurtz*, 66 Colo. 447, 182 Pac. 884, where it was held that a Home Rule City organized under Art. XX of the Constitution has power to impound animals running at large within its bounds and to charge owners a reasonable fee for discharging this duty. The ordinance there dealt with livestock and fowl and it was held that the owner *is not* entitled to his day in court prior to impounding or assessment of the charge; the court saying the customary method of dealing with estrays by notice and sale, or surrender on payment of charge, has been approved in Colorado.

To plaintiff's argument that the Denver ordinance violates plaintiff's constitutional rights by denying him due process of law, we observe that though no legislative body may deprive a person of his life, liberty or property without due process of law, yet in determining what constitutes due process in the case before us, we are bound to consider the nature of the property, the necessity for its sacrifice, and the extent to which the requirements and regulations provided in the ordinance may be regarded as within the police power. In the Sentell case supra at pages 705 and 706 it is stated:

"So far as property is inoffensive or harmless, it can only be condemned or destroyed by legal proceedings, with due notice to the owner; but so far as it is dangerous to the safety or health of the community, due process of law may authorize its summary destruction.

As was said in *Jenkins v. Ballantyne,* 8 Utah, 245, 247, "The emergency may be such as not to admit of the delay essential to judicial inquiry and consideration, or the subject of such action and process may be of such nature, or the conditions and circumstances in which the act must be performed to effect the protection and give effect to the law may be such as to render judicial inquiry and consideration impracticable.'

"Although dogs are ordinarily harmless, they preserve some of their hereditary wolfish instincts, which occasionally break forth in the destruction of sheep and other helpless animals. Others, too small to attack these animals, are simply vicious, noisy and pestilent. As their depredations are often committed at night, it is usually impossible to identify the dog or to fix the liability upon the owner, who, moreover, is likely to be pecuniarily irresponsible. In short, the damages are usually such as are beyond the reach of judicial process, and legislation of a drastic nature is necessary to protect persons and property from destruction and annoyance. Such legislation is clearly within the police power of the State."

Under the record and the authorities we have cited, there remains no doubt that the city acted well within its police powers in the adoption and enforcement of the ordinance involved and the procedures provided do not deny plaintiff due process of law. Without holding that notice or hearing of any kind is necessary under the circumstances, we are satisfied that the notice provided in the ordinance, affording owners the opportunity to regain their dogs, is reasonable, adequate and constitutional; that it was not necessary to the validity of the ordinance to declare or find the running at large of dogs to be a nuisance, and that it is not necessary that a hearing be had before dogs are either taken or disposed of pursuant to the provisions of this ordinance. We think also that it is not necessary that there be an urgent declared public necessity to justify legislation regulating the keeping and control of dogs, or in

case of violation of such regulations to provide for their summary destruction.

Plaintiff cites the consolidated cases of *Smith v. Costello* and *Nissen v. Costello,* 290 P. (2d) 742, decided in Idaho in 1955, as authority for the contention that the Denver ordinance is invalid for constitutional reasons. The facts there were that a state conservation officer had shot dogs on sight which were running at large. He was sued for damages by the owners of the dogs and in defense pleaded a state statute which declared that a dog running at large in territory inhabited by deer is a public nuisance. The court held the statute invalid and stated that it afforded no defense even though not declared invalid prior to the acts complained of. The court reasoned that dogs, both at common law and by statute, are property and objects of value; that a dog is not a nuisance per se; that deer might be found nearly anywhere, thus any dog could be shot anywhere without cause if not confined; that the statute denied due process of law in providing such *summary* action; that the legislature cannot declare that to be a nuisance which is not one in fact or per se, to do so being arbitrary and unreasonable.

A reading of that decision clearly distinguishes it from the case at bar. In the Denver ordinance there is no arbitrary declaration of nuisance; on the contrary there is express provision, not for the summary destruction of the animals impounded, but their impoundment for three days and for notice to the owners which must be direct if they are known and by posting if they are unknown. Though we consider such notice not necessary to the validity of this ordinance, were it otherwise we would deem the notice provided reasonable and adequate under the circumstances, affording due process of law in safeguarding the rights of any dog owner. Any person whose dog is missing for a day or two, if he has not been notified of its impoundment, can visit or call

the pound to inquire whether his dog has been impounded.

*Rose v. City of Salem* (1915), 77 Ore. 77, 150 Pac. 276, cited by plaintiff involved a city charter provision which gave the city council authority to prohibit domestic animals and dogs from running at large and to impound and kill dogs under certain conditions. There an ordinance very similar to the one before us was held to be unconstitutional, holding dogs to be property and a three day notice not adequate to constitute due process of law. In a later Oregon case, however, it is stated that the Rose case is contra to "practically all of the decisions of the courts, including the Supreme Court of the United States." *Hofer v. Carson* (1922), 102 Ore. 545, 203 Pac. 323. The Oregon court then proceeds to cite with approval *Sentell v. New Orleans and Carrollton Railroad Company, supra,* and the many authorities sustaining restraints on dogs and their summary destruction when in violation thereof. *Rose v. City of Salem* is not only in the minority but represents a viewpoint out of harmony with the more enlightened concept of regulation in modern urban communities.

It is within the reasonable discretion of the legislative body to determine how and to what extent dogs running at large within a city should be restrained and disposed of. *Hofer v. Carson, supra.* Not only may they become a menace to health as carriers of disease but as is common knowledge many dogs have a propensity to bite or frighten people, frequently create traffic hazards and destroy the flowers and shrubbery of suffering neighbors. The dog's achievement of a full property status has been coupled with the growth of modern city life with all its complexities. Traditional rights of citizens to keep livestock and fowl have been abolished altogether in most cities. It is only natural then that dogs, which historically have been the object of special restraints, should become even more restricted as to freedom of movement·than in earlier times.

454

Plaintiff cites *Brown v. City of Denver*, 7 Colo. 305, 3 Pac. 455, as relating to due process of law and unconstitutional deprivation of property as being applicable to the facts in the case at hand. We do not deem it so. That case relates to improvement assessments and the need to give notice and the opportunity to be heard to property owners affected. It is not related to the police power or enactments thereunder nor to the special category of dogs.

The burden of demonstrating the unconstitutionality of a law is upon the party asserting its invalidity, and courts will not declare a legislative act unconstitutional unless it is clearly so. *Allan v. Bailey*, 91 Colo. 260, 14 P. (2d) 1087; *Hughes v. State of Colorado*, 97 Colo. 279, 49 P. (2d) 1009. All presumptions favor the validity of a statute. *Hofer v. Carson, supra.* It is clear that plaintiff here has failed to overcome the presumption of validity of this ordinance.

Plaintiff contends that this is an amendment of Code Section 753 which violates Article 216 of the Denver Charter which provides, "No ordinance shall be revised or amended, or the provisions thereof extended or conferred by reference to title only. So much thereof as is revised, amended, extended, or conferred shall be re-enacted at length." This is similar to the wording in the State Constitution which has been considered by this court in the past. Plaintiff's view is that this provision of the charter requires the re-enactment in the "leash law" of that part of Sec. 753 incorporated by reference. The purpose of such restrictions has been stated many times by this court. They are intended to prevent the confusion and uncertainty which prevailed as a result of the amendment of statutes and ordinances by reference to title only, or by interpolating words without re-stating the part amended, often resulting in the legislative body itself being in ignorance of its own enactment. Here the ordinance is complete in itself. The fact that new sections have been added to the code does not require the

city to re-enact the entire measure referred to in the new ordinance. To require it to do so would be to compel a vain repetition and duplication and would result in over-burdening the statute books to the point of absurdity. This point was ably and thoroughly settled in this state by *Denver Circle R. Co. v. Nestor,* 10 Colo. 403, 15 Pac. 714, and many other cases, including *Post Printing Co. v. Denver,* 68 Colo. 50, 189 Pac. 39; *Jurisdiction of Justices of the Peace,* 9 Colo. 625, 21 Pac. 472; and *Armstrong v. Johnson Co.,* 84 Colo. 142, 268 Pac. 978. The opinion in *People v. Friederich,* 67 Colo. 69, 185 Pac. 657, cited by plaintiff as controlling, must be restricted to its facts.

We note that the practice of incorporation by reference, similar to that done in this case, has long been followed by our state legislature as well as municipalities. Though not the sole criterion of constitutionality such procedural precedence lends weight to defendant's position.

Plaintiff next contends that the opinion in *Terminal Drilling Co. v. Jones* (1928), 84 Colo. 279, 269 Pac. 894, held that the provision of Sec. 24, Art. V of the constitution does not apply to acts which are only *remedial or procedural,* that the case at bar is *substantive;* and *a fortiori* the prohibition is effective. The argument is not convincing. In the first place the ordinance before us is complete in itself as we have noted. Secondly, the reference to Sec. 753 as relating to the disposition of dogs once impounded, does not amend or repeal anything. There has merely been provided in the new regulatory ordinance a procedural matter; viz., the field or scope of its application.

Substantive law has been defined "as the positive law which creates, defines and regulates the rights and duties of the parties and which may give rise to a cause for action, as distinguished from adjective law which pertains to and prescribes the practice and procedure or the legal machinery by which the substantive

law is determined or made effective." *Petty v. Clark* (1948), 113 Utah 205, 192 P. (2d) 589, 593-594.

Plaintiff urges that the publication of the "leash law" fails to comply with Section 5, Art. XX of the Colorado Constitution which provides in part:

"The Clerk of the city and county shall publish, with his official certification, for three times, a week apart, in the official newspapers, the first publication to be with his call for the election, general or special, *the full text* of any charter, charter amendment, *measure,* or proposal for charter convention, or alternative article or proposition, *which is to be submitted to the voters."* (Emphasis added.)

Again we point out that the ordinance as published was complete in itself and the same reasons exist to sustain it against this challenge as support it under Article 216 of the Denver Charter relating to re-enactments of revised and amended ordinances. In *Houston v. Kirschwing,* 117 Colo. 92, 184 P. (2d) 487, it was held that the purpose of a municipal charter provision that ordinances must be published and shall not be revised or amended by title only, is to prevent the confusion which results from amending ordinances by reference to the title, or by interpolating words without re-stating the part amended.

This reasoning applies as well to the publication of ordinances under Section 5 of Article XX.

Plaintiff's attack on the ordinance on the ground that its enforcement is improperly delegated, must also fail. The evidence is that though the Chief of Police and his officers are charged with enforcement of this law; that in fact the City Manager of Health and his department are doing the actual work of catching, impounding and disposing of the dogs. It also shows that the procedure adopted is for the police department to receive the calls for pickups and that these are relayed to the health department trucks by radio. The health department already was operating the pound and had

some trucks used primarily for its rabies control program. The fact that it bought additional vehicles and hired more personnel is of no concern to plaintiff. We point out that it is also immaterial to a delinquent dog owner which city department captures and impounds his dog. This was no delegation of a decision making function and does not relieve those primarily charged with responsibility to see that the work is done properly. It does make for sensible use of the taxpayer's money within the executive branch of government. There is testimony in the record that enforcement of the "leash law" has aided the rabies program of the city, many dogs being picked up which wear no rabies tag. This in itself could be said by the council to show need of the ordinance.

Finally plaintiff urges that the trial court erred in failing to make specific findings of fact under Rule 52 R.C.P. Again we perceive no error. The trial court did enter a lengthy written "Judgment and Order" detailing the evidence and the law as applied thereto. Though it is necessary for trial courts to expressly label their findings of fact in cases involving disputed evidence and it is better practice to do it in all instances, nevertheless we find that in the instant case the written "Judgment and Order" is a sufficient compliance with the requirements of Rule 52, which provides "if an opinion or memorandum of decision is filed, it will be sufficient if the findings of fact and conclusions of law appear therein." Several federal decisions have held that a failure to comply literally with this rule in their courts under certain facts is not fatally defective. See *Alger v. U. S.,* C.A. Ind. 1948, 171 F. (2d) 667, and *Hazeltine Corporation v. General Motors Corporation,* C.C.A. Del. 1942, 131 F. (2d) 34.

The judgment is affirmed.

Mr. Justice Day not participating.